BOWDEN *v.* WEBB.

Opinion delivered January 11, 1915.

1. ELECTION—CONTEST—ORDER OF CIRCUIT JUDGE—FINALITY—REVIEW—CERTIORARI.—On an appeal to the circuit court from the county court, in a cause contesting the validity of an election concerning the removal of a county seat, the circuit judge in vacation made an order requiring certain election commissioners to appear before the clerk, and to file the election books containing the names of those who voted at the election, and requiring that said books be kept by the clerk. *Held,* the order of the circuit judge was final and subject to review, and there being no provision for an appeal from an order of a circuit judge in vacation, a writ of certiorari is the appropriate method of bringing up the record for review.

2. ELECTIONS—COUNTY SEATS—RETURNS, HOW MADE.—Returns of county seat elections are to be made to the county election commissioners, the same as required by the statute in general elections and a contest of such an election must originate in the county court.

3. ELECTIONS—POLL BOOKS—CONTEST—JURISDICTION OF CIRCUIT JUDGE.—Where the result of an election is contested, the circuit judge in vacation, when the contest is pending in the circuit court, on appeal from the county court, may require the election commissioners to discharge their duty by allowing a reasonable opportunity to contestants and those interested in the result of the election, to inspect the poll books.

4. ELECTIONS—POLL BOOKS—INSPECTION.—The original, as well as the duplicate poll books, made at an election, are public records, in the sense that they must be kept open for the inspection of those who are interested in them and have a right to see them.

5. MANDAMUS—PUBLIC OFFICER—REMEDY.—Mandamus is an appropriate remedy for requiring a public officer to discharge his duty.

6. ELECTIONS—CONTEST—INSPECTION OF RECORDS.—In a contest over a county seat election, where fraud in the election is alleged by contestants, an inspection of the records is indispensable, for the records are presumed to be correct until overturned by evidence showing that they are not correct.

7. CIRCUIT JUDGES—POWERS IN VACATION.—Circuit judges in vacation, may exercise only such judicial powers as are conferred by statute.

8. ELECTIONS—CONTEST—INSPECTION AND CUSTODY OF RECORDS—POWER OF CIRCUIT COURT.—While, in an election contest, the circuit judge may order the production of the poll books to be used as evidence, the circuit judge in vacation has no power to order the relinquishment of the custody of the same by the election commissioners.

*Certiorari* to Hempstead Circuit Court; *R. G. Haynie,* Judge; judgment quashed.

*Jas. H. McCollum, T. C. Jobe* and *O. A. Graves,* for petitioners.

1. The circuit *judge* had no power or authority to make the order. Kirby's Dig., § § 2832-3; 163 S. W. 1173; New Standard Dictionary, p. 2559. "Competent Tribunal" means a *court* of justice. 2 Words & Phrases, 1362; 2 Ark. 229; 30 *Id.* 764; 38 *Id.* 213; 86 *Id.* 259; 103 *Id.* 571; 23 Cyc. 543-5; 26 U. S. (L. Ed.) 1111; 2 Words & Phrases, 1678; 23 Cyc. 543.

2. Neither judge nor court has the power to order the issuance of a *subpoena duces tecum* for the production of the books for inspection. Kirby's Digest, § 2838; 75 Ark. 455; 32 *Id.* 553; 49 Am. St. 557; 16 L. R. A. (N. S.) 1062; 40 Cyc. 2168; 128 Am. St. 749; 40 Cyc. 2170; 6 L. R. A. (N. S.) 325, note; 12 *Id.* 636; 31 L. R. A. (N. S.) 835; 15 Cyc. 429.

3. Should the order be carried out the integrity of the poll books would be destroyed and they would be useless as evidence. 50 Ark. 85; 11 Am. St. 787; 49 *Id.* 557; 16 L. R. A. (N. S.) 1062; McCrary on Elections, § § 471-4, 480-1.

4. Before a *subpoena duces tecum* will be ordered for books, it must appear that they contain material evidence. 66 Ark. 229; 37 Am. Rep. 426; 128 Am.

St. 749, note; 41 U. S. (L. Ed.) 87; 40 Cyc. 2169; 31 L. R. A. (N. S.) 835. As to whether or not the writ is really a subpoena d. t. see 16 L. R. A. (N. S.) 1062.

5. *Certiorari* is the proper remedy. 29 Ark. 173; 38 *Id.* 159; 39 *Id.* 126; *Ib.* 347; 61 *Id.* 605; 69 *Id.* 587; 73 *Id.* 604; 80 *Id.* 200; 103 *Id.* 571; 109 *Id.* 100; 50 L. R. A. 787; 7 *Id.* (N. S.) 512.

*Etter & Monroe, Dan W. Jones* and *D. B. Sain,* for respondents.

1. This application was made to the circuit judge in vacation under Kirby's Dig., §§ 3074 to 3078. The circuit judge in vacation has power to make the order. Kirby's Dig., §§ 2883, 3074 to 3078. The provisions of these statutes were fully complied with. See Kirby's Dig., § 1125, and 73 Ark. 270; Kirby's Dig. § 2838. The only competent evidence are the ballots and certificate showing how each elector voted. The production of the poll books does not interfere with the secrecy of the ballot or certificates.

2. The books, when produced, are under the control of the court, and the control of the election commissioners ceases. 75 Ark. 452.

3. The circuit court had jurisdiction over the contest by appeal, and had authority to make any necessary order for preserving the ballots and using them as evidence. 86 Ark. 272; Kirby's Dig., § 2838; 81 Ark. 543.

4. Nothing in section 2838, Kirby's Digest, is mentioned with reference to poll books, but only the ballots and certificates. There is no statute requiring *poll books* to be kept secret.

5. The petition for subpoena d. t. is specific as to the particular books desired.

McCulloch, C. J. An election was held in Hempstead County on August 15, 1914, to decide the question of removal of the county seat from Washington to Hope; and the majority being, on the face of the returns as certified by the election commissioners, in favor of removal, a contest was instituted by those opposed to such re-

moval. The county court decided against the contestants, and an appeal was taken to the circuit court, where the case is now pending, and stands for hearing at the next term of that court, to be held in April, 1915.

While the case was pending in the county court, an order was made by the court on the judges of election of the different townships requiring them to file with the clerk of the court the duplicate poll books kept by them pursuant to the election laws of the State, and that order was complied with except by the judges of election in nine of the voting precincts, who reported that the duplicates kept by them had been lost or destroyed and that the same could not be produced. After the appeal was taken the contestants made application to the circuit judge in vacation for a subpoena *duces tecum,* requiring the election commissioners of the county "to appear before the clerk of the circuit court on a day to be fixed * * * and to bring with them and to produce and file with the clerk of the Hempstead circuit court the poll books containing the names of the persons who voted at the election" in the townships specified where the judges had not complied with the order with respect to delivery of the duplicate poll books, and "also to testify on behalf of the contestants" in the proceedings pending in the circuit court. Notice was given of this application, and on hearing thereof the judge made an order in compliance with the petition, directing the clerk of the court to issue the subpoena *duces tecum* requiring the election commissioners to appear before the clerk on the 15th day of December, 1914, "and to bring with them and file with the clerk of the Hempstead circuit court in said cause on said day the poll books containing the names of the persons who voted at the election held in Hempstead County, Arkansas, on the 15th day of August, 1914, upon the question of the removal of the county seat from Washington, Arkansas, to Hope, Arkansas, and said poll books so filed by said election commissioners shall be safely kept by said clerk for the inspection of all parties to this suit and shall remain in his office until further orders." It

will be seen from a comparison of the prayer of the petition and the order of the court, that the latter goes beyond the former in requiring the commissioners not only to produce the poll books, but that the same be filed and remain in the custody of the clerk until further orders of the court.

(1) The commissioners, through their attorneys, have presented a petition to this court for a writ of *certiorari* to bring up the order of the circuit judge for review, and they challenge the jurisdiction of the judge to make such an order, particularly that part of it which changes the custody of the poll books from the election commissioners to the clerk of the court. The order of the circuit judge is to that extent a final one, which is subject to review, and as there is no provision for an appeal from an order of the circuit judge in vacation, the writ of *certiorari* is the appropriate method of bringing up the record for review. *State* ex rel. v. *Neel,* 48 Ark. 283; *Jackson,* Ex parte, 45 Ark. 158; Ex parte *Helmert,* 103 Ark. 571.

(2) Returns of county seat elections are to be made to the county election commissioners, the same as required by the statute in general elections, and a contest of such an election must originate in the county court. *Pitts* v. *Stuckert,* 111 Ark. 388.

The statutes governing elections provide that judges of election shall, after counting the ballots, prepare and sign in duplicate a certificate showing the number of votes given for each person, etc., and that "after making such certificate, the judges, before they disperse, shall put under cover one of said tally-sheets, certificates and poll-books and seal the same, and direct it to the board of county election commissioners." Kirby's Digest, § 2832. The election judges are further required to send up the ballots in a package separate from the certificates and poll-books. Section 2833. The duties of the election commissioners, with respect to the returns made to them, are prescribed in section 2838 as follows: "The county election commissioners shall retain the custody of and

safely keep all ballots and certificates returned to them from the several precincts for a period of six months, after which time the same shall be destroyed, unless the commissioners shall be sooner notified in writing that the election of some person voted for at such election and declared to have been elected, has been contested, or that criminal prosecution has been begun against any officer of election, or person voting thereat, for any fraud in said election, before a tribunal of competent jurisdiction, in which event, so many of said ballots and certificates as may relate to matters involved in said contest, or any prosecution, shall be preserved for use as evidence in such contest or prosecution. During the time such ballots may be retained, the package containing same shall not be opened by any one, unless directed to do so by some competent tribunal before which an election contest or prosecution is pending, in which such ballots are to be used as evidence.''

(3) It will be observed from reading the terms of the statute, that the ballots are to be kept in separate packages and not opened until ordered by a court of competent jurisdiction in a contest or a criminal prosecution, but that the package containing the certificates and poll-books are to be opened by the election commissioners for the purpose of casting up and certifying the total result of the election in the county. Thus the election commissioners are by statute made the custodians of the certificates, poll-books and ballots, and the ballots are to be kept secret, but the poll-books and certificates are public records about which there is no secrecy, and which are subject to inspection like any other public records. The legal custody of all these records continues with the election commissioners, unless those custodians are required to appear and produce the records as evidence in court. In that event, the court, in the exercise of its inherent powers, may retain the custody of the records and place them in the hands of the custodian of its own selection. It is in that way only that the custody can be changed, and, as we said in the case of *Lovewell* v. *Bowen,* 75 Ark.

452, "the control of the election commissioners over the ballots ceases when they produce them in court. Then they become evidence in the cause, and pass under the dominion and control of the court." The court was there speaking about the ballots, but the statement applies with equal force to the other records, such as poll-books and certificates. The statutes provide that the ballots shall not be opened except on the order of "some competent tribunal before which an election contest or prosecution is pending," which means, of course, the court and not the judge in vacation. This proceeding does not relate at all to the custody of the ballots and there is no effort to have them opened under orders of the circuit judge or to change their custody. The proceedings relate only to the poll-books and it is sought to change them from the custody of the commissioners to the clerk. The poll-books being, as we have already seen, public records, subject to inspection by interested parties, it can not be doubted that the circuit judge in vacation has the power to require the officers to discharge their duty by allowing a reasonable opportunity to those who are contestants, and thus interested in the result of the election, to inspect them.

(4) The fact that the election judges are required by statute to keep the duplicate poll-books for inspection does not affect the status of the originals, as public records, when delivered into the hands of the election commissioners. They are all public records—not permanent records, it is true—but nevertheless public records in the sense that they must be kept open for the inspection of those who are interested in them and have a right to see them.

(5) Mandamus is an appropriate remedy for requiring a public officer to discharge his duty. *Boylan* v. *Warren, Clerk,* 39 Kan. 301; *State* ex rel. v. *King, Auditor,* 154 Ind. 621; *Aitcheson* v. *Huebner,* 90 Mich. 643; *State* ex rel. v. *Williams,* 110 Tenn. 549. That remedy was accorded to a voter to enforce his right to inspect registration records in the hands of election officers by the

New Jersey court in the case of *Higgins* v. *Lockwood,* 74 N. J. L. 158.

(6-7-8) In addition to that, the statute expressly provides that the court or the judge thereof may require a witness "to bring with him any book, writing or other thing under his control which he is bound by law to produce in evidence." Kirby's Digest, § 3111. It is said here in argument that the effort of the contestants to obtain an inspection of the poll-books is a mere "fishing expedition," which neither the court nor the judge could give any aid to. That is not a correct characterization of the proceedings, for the contest is a *bona fide* one, so far as anything to the contrary appears, and there is an allegation of fraud in the election. An inspection of the records is indispensable in a contest, for they are presumptively correct until overturned by evidence showing that they are not correct. *Powell* v. *Holman,* 50 Ark. 85; *Condren* v. *Gibbs,* 94 Ark. 478. Contestants are entitled to see the poll-books and to have the election commissioners produce them as evidence so that the presumption of their correctness may be overcome by other testimony. It is within the power, therefore, of the circuit judge to order the production of the poll-books to be used as evidence in the case, and the commissioners have no legal right to deny the contestants the privilege of inspecting those records. It is quite another thing, however, to order the books taken out of the custody of the officers who are by the statutes of the State constituted the custodians. We are of the opinion that the judge has no power to make such an order, and that if the custody is changed at all it must be by an order of the court when the records are produced in court as evidence. The judge of the court can in vacation exercise only such judicial powers as are conferred by statutes, and there is no power conferred either expressly or by implication on the judge of a court in vacation to order the relinquishment of the custody of public records. That authority obtains only in the court itself and is a necessary part of

the power to control the proceedings and to preserve the evidence before it.

It follows that that part of the order of the circuit judge directing the election commissioners to surrender possession of the poll-books to the clerk of the court is void and will be quashed. It is so ordered.

HART and KIRBY, JJ., concur in the judgment but express the view that the circuit judge has the power, under section 2838, Kirby's Digest, while the contest is pending, to compel the election commissioners to permit contestants to inspect the poll-books.