## STATE EX REL. ROMSA v. GRACE, COUNTY CLERK, CARROLL, INTERVENER

(No. 1700; November 24, 1931; 5 Pac. (2d) 301)

For the appellant there was a brief by *C. P. Plummer* and *Ellery & Spencer,* both of Cheyenne, Wyoming, and oral argument by *Mr. Ellery* and *Mr. Plummer.*

For the respondent there was a brief by *Joseph C. O'Mahoney, Bard Ferrall* and *John C. Pickett,* of Cheyenne, Wyoming, and oral arguments by *Mr. O'Mahoney* and *Mr. Ferrall.*

BLUME, Justice.

This is an action for a writ of mandamus, brought in the name of the State of Wyoming on the relation of G. H. Romsa against R. A. Grace, County Clerk of Laramie County, as defendant, to compel the defendant to permit relator to inspect certain affidavits filed in connection with the election of November 4, 1930. George J. Carroll intervened in the case. Both the defendant and the intervener filed a demurrer on the ground that the petition failed to state a cause of action. These demurrers were sustained and relator not pleading further, judgment was entered dismissing the petition. From this action of the court relator has appealed.

The petition alleges that relator and George J. Carroll were opposing candidates for the office of sheriff of Laramie County at the general election held November 4, 1930; that Carroll was declared elected to the office; that there is now pending in the District Court of Laramie County a contest proceeding between relator and Carroll for the purpose of contesting the election of Carroll to the office aforesaid; that relator made a demand upon the defendant county clerk to permit relator and his attorneys to inspect and examine all the affidavits of challenged and unregistered voters and all the affidavits of electors concerning the qualifications of persons voting received by the county clerk from the judges of election in thirteen precincts in Laramie County, Wyoming, ten of which are in the city of Cheyenne, where prior registration is required, and three in the outlying precincts where, presumably, prior registration is not required; that the clerk has refused and still refuses to comply with these requests, which requests are not founded upon mere curiosity, but that the examination and inspection of the affidavits is necessary to the relator in the proper preparation for and trial of the contest proceeding above mentioned. It does not appear from the petition upon what ground the contest of the election was brought.

Relator claims that he has the right to examine the affidavits above mentioned under the provisions of Section 1368, Wyo. C. S. 1920, which provide in connection with the duty of the county clerk, that "all books and papers required to be in their offices shall be open to the examination of any person; and if any person or officer shall neglect to comply with the provisions of this section, he shall forfeit, for each day he so neglects, the sum of five dollars."

It is the contention of the defendant and intervener, however, that the relator has not alleged such interest in the inspection of these affidavits as would entitle him to a writ of mandamus. Pertinent statutory provisions on the subject are Section 2570, which provides that when the votes at an election have been canvassed the register or pollbooks kept shall be returned and preserved in the office of the county clerk as a public record and shall at all times be open for public inspection. In precincts where prior registration is not required the persons offering to vote must take and subscribe the same oath as is required of persons applying to be registered, and Section 2575 provides that the affidavit thus made *shall be returned by the judges with the poll list.* Section 2639 provides that a person voting in a precinct where prior registration is not required, but who has not registered, may under certain conditions register and make affidavit the day of election and be permitted to vote. The affidavit so made *"shall be returned by them with the poll lists."* Similar provision is made in Section 2635 for an affidavit made on the day of election by one who has been challenged. The law provides that the judges of election shall, after the polls are closed on election day, proceed to count the ballots, enter the result in the poll books, and then further provides:

Sec. 2655. "The judges of election shall then enclose and seal one of the poll books together with all the ballots cast and affidavits of electors concerning the qualification of persons voting, all ballots returned by voters as spoiled and all ballots not cast, accounting for those posted as by

law required, under cover directed to the county clerk of the county in which such election is held, or municipal clerk as the case may be, and the packet thus sealed shall be conveyed by one of the judges or clerks of election, to be determined by lot if they cannot agree otherwise, and the said packet shall be delivered to the postmaster at the nearest postoffice and registered within forty-eight hours from the closing of the polls. The judges of election shall retain the other poll book in their possession.''

Sec. 2656. ''All the ballots counted by the judges of election shall, after being read, be strung upon a strong thread or twine in the order in which they have been read, and shall be delivered, together with the poll books, to the clerk as hereinbefore specified, who shall carefully preserve said ballots for six months, and at the expiration of that time shall destroy them by burning without the package being previously opened; provided, if any contest of election shall be pending in which such ballots may be required as evidence, the same shall not be destroyed until such contest is finally determined.''

1. Relator, as already stated, claims that under Section 1368, supra, he is entitled to the inspection of the affidavits whether he has an interest therein or not. There might be ground for that contention, if that section could be taken literally. But it is apparent that it cannot, for it would then at once run counter, at least, to the provision that ballots shall be kept in a package under seal. On the other hand, Section 2656 cannot be controlling herein. For the foregoing provision, contained in that section, that the ballots shall be kept under seal, has reference only to ballots and not to the affidavits returned with them. These affidavits are required to be put into the same package with the ballots; but the legislature has left us in the dark as to what shall be done with them thereafter. It has neither provided that they shall be taken out, nor that they shall be retained therein. The provision that the ballots shall be destroyed after a period of six months, in the absence of a contest ''without the package being previously opened'' does not throw any light on the subject, for it is clear, even though there is no specific provision therefor, that the pack-

age must be opened when the county clerk receives it for the purpose at least of taking therefrom the poll lists in order that the returns may be counted by the canvassing board. Sections 2575 and 2639, supra, state that the affidavits shall be returned with the *poll lists*. This indicates that the legislature deemed them to belong to the latter, and that is, of course, true. It cannot be contended that they should be treated as the ballots are. The latter have no earmarks and might be easily effaced and good reason exists for the provision that they shall be kept under seal. No such reason exists for keeping the affidavits sealed, and no good ground can be advanced why they should not be open to inspection as much so as the poll lists. Still, we cannot believe that they were intended to be such an integral part of the poll lists as to come within the contemplation of Section 2570, which provides that the poll lists shall be permanently kept in the office of the county clerk and open to inspection. There is, of course, reason that the affidavits be kept temporarily, at least, and until after a contest, if brought, has been disposed of, and that the legislature contemplated that is apparent from the fact that they are required to be sent to the county clerk. But there is no more reason to keep them permanently than to keep the affidavits made by prospective voters during the time of the regular registration periods, and there is no provision whatever in the law that the latter shall be preserved. It is apparent, accordingly, that it is almost impossible to ascertain the intention of the legislature in regard to the point in controversy here. We must, to arrive at any conclusion herein, consider general principles laid down by the courts.

2. At common law a person had no right to inspect public documents and make a copy thereof, unless he had an interest in doing so, but he had such right if he had an interest. 53 C. J. 624. Many of the courts of this country have adopted that rule, while others have gone much farther, and hold that all persons have a right to resort to pub-

lic records, irrespective of motive or interest. 53 C. J. 624, 625. We need not decide what the law is in regard to the ordinary records which are strictly and unquestionably public, and shall confine ourselves to considering the law as to affidavits used in connection with elections. A distinction has at times been drawn as to records which are strictly public and those which are not. That was done in the case of People ex rel. v. Harnett, 131 Misc. Rep. 75, 226 N. Y. S. 338 (affirmed 249 N. Y. 606, 164 N. E. 602), the court saying:

"A public record, strictly speaking, is one made by a public officer in pursuance of a duty, the immediate purpose of which is to disseminate information to the public, or to serve as a memorial of official transactions for public reference. Evanston v. Gunn, 99 U. S. 660, 26 L. Ed. 306; Sturla v. Freccia, L. R. 5 App. Cas. (House of Lords) 623. It is not every document on file with a public officer, or every memorandum made by a public officer, that is a public document. Reports of private individuals to government officials, even pursuant to statute, correspondence of such officials in matters relating to private affairs of a citizen, although in connection with public business, or memoranda of public officers for their own convenience, are not public documents or records, unless made so by statute. American Dist. Tel. Co. v. Woodbury, 127 App. Div. 455, 112 N. Y. S. 165. In the case of public records, strictly speaking, all citizens have a right to resort to them, irrespective of their motives or interest. They may examine them to satisfy mere curiosity, or they may take transcripts from them for sale. People v. Richards, 99 N. Y. 620, 1 N. E. 258. Whether or not records are strictly public records is often expressly declared by statute. In the absence of statute, the nature and purpose of the record, and, possibly, custom and usage, must be the guides in determining the class to which it belongs. Evanston v. Gunn, 99 U. S. 660, 25 L. Ed. 306. As to records and documents not strictly public records, but relating to public business, I do not think there is a right of inspection on the part of all citizens. Such a right would lead to inconvenience in the transaction of public business, and would ofttimes result in serious consequences to citizens and private business. It would be a startling proposition to public officers, and to the public as well, if they were

informed that all citizens had the right, in the absence of statute to the contrary, to search the files and records of all public officers, as it might suit their fancy. I take the rule to be in relation to such records and documents, although on file with a public officer pursuant to statute, that they ought not to be indiscriminately subject to inspection. However, any person who has an interest in such record or document should ordinarily be permitted to inspect it, unless its inspection would obviously be detrimental to public interest. The difficulty is to determine what constitutes a sufficient interest or an untimely and improper circumstance for inspection. * * * A person has an interest in a record or document filed pursuant to statute, although not strictly public, sufficient to entitle him to an inspection, if it may be the basis of some official action or proceeding directly affecting him, or have a direct bearing upon his substantial rights.''

See also 53 C. J. 606, 625; 1 Greenleaf on Ev., Sec. 475.

The affidavits in question in the case at bar are documents of a public nature. They are not private documents. They were evidently not intended to be kept as permanent records, but only temporarily, as above stated, and doubtless solely for the limited purpose so that they might, if necessary, be used in a contest or other proceeding. That would seem to indicate that they should be open to inspection only to those who have a special interest therein. But if relator has such special interest, he should not, according to the foregoing case, be denied the right of inspection. That would follow from the rule of the common law as above stated, and in the absence of a specific statute on the subject. As was said in Clay v. Ballard, 87 Va. 787, 13 S. E. 262, 263:

''These books are of a public nature, and, therefore, upon general principles, independently of any statute on the subject, any person having an interest in them would have a right to inspect them.''

It is argued that the statute furnishes the means for all the information which a contestant might want, without in-

spection, by providing that the poll lists must show who was sworn in on the day of election. But that is hardly true. It would not show, for instance, whether or not two qualified electors of the precinct attested the qualifications of the voter. Other facts not so shown need not be mentioned.

The question then is, Has the relator made a showing of special interest? He should, it would seem, show prejudice of some sort in order to entitle him to inspection. Boylan v. Warren, 39 Kans. 301, 18 Pac. 174, 7 Am. St. Rep. 551. Mere *desire* to contest the election, when that desire has a basis neither in the fact or the belief that fraud or irregularities were committed in the election, would hardly, in the absence of specific legislative sanction to the contrary, seem to be sufficient, for as courts favor settlements of disputes in general, so they could not well encourage election contests. Relator has not alleged, for instance, that any fraud or irregularity was committed, or that he believes that fraud or irregularity was committed, in the precincts named in the petition, by or in connection with the voters who registered or swore in their votes on the day of election, or that the affidavits show, or might show, or might assist in showing, anything else that in any way would affect the result of the election. If either of these allegations, or the alternatives mentioned, appeared in the petition, in addition to the allegations in fact therein contained —in other words, if any prejudice to relator were shown by the refusal of inspection—there would have been, we think, a sufficient showing of interest, for it must be borne in mind that inspection is primarily for the purpose of gaining information, or verifying the information already partially in hand. If knowledge, definite and certain, were in hand, inspection would be useless. But no such allegations as above mentioned appear. Relator has alleged that a contest is pending, and that he is not seeking inspection out of mere curiosity. These are important allegations, but in themselves not sufficient. A contest might be brought on many grounds. For aught we know, it may, for instance,

be based on the disqualification of Carroll for the office of sheriff, and in that event, of course, the affidavits in question would be wholly immaterial. It is further alleged that the inspection is ''necessary'' for the preparation and trial of the case. The facts or reasons making it necessary are not shown, and while there may be some doubt about it, the majority of the court, at least, believe that the allegation as it stands, and without more, is but a legal conclusion.

3. Is mandamus the proper remedy herein? We shall consider that question only under the facts in this case, from which it appears that there is an action pending to contest the election. We need not consider what would be the rule if no such action were pending. It has been held that the relator has the right to take the deposition of the county clerk, issue a subpoena *duces tecum,* and have him punished for contempt, in case of refusal to answer the proper questions or produce the documents in question. These points have been expressly decided in Ohio, under statutes exactly like ours, and on a number of occasions. In Re Rauh, 65 O. S. 128, 61 N. E. 701; In Re Miller, 8 Ohio N. P. 142; In Re Robinson, 7 Ohio N. P. 105. Section 5832, Wyo. C. S. 1920, provides that depositions may be taken at any time after service of the summons on the defendant in a suit. Section 5831 provides that these depositions may be used only under certain circumstances, but, as said by the Ohio courts, the right to take depositions and the right to use them must be carefully distinguished. Section 5831 does not limit the right to take depositions to cases when they may be used. Section 5814, construed in conjunction with the preceding section, gives authority to one authorized to take depositions to subpoena the witness and direct him to produce documents, and Sections 5818 to 5820 provide for the power to punish for contempt, the exact meaning or extent of which we need not decide. The Ohio courts hold that a contumacious witness may be imprisoned. If that is the law, the fact, nevertheless, whether or not the questions asked are proper, and whether or not the

documents asked for are such as must be produced must, if a writ of *habeas corpus* is asked in case of imprisonment of a contumacious witness, ultimately be decided by a higher tribunal, and for that reason the taking of depositions of a witness in a case of this character may not be altogether the most satisfactory course to pursue. And we need not decide whether the right to take that course would deprive a litigant of the right to a writ of mandamus.

We think that there is a simpler method to reach the result which the relator seeks. There are certain powers which are inherent in the court. It will be readily conceded, we think, on every hand, that if it appears during a trial, upon the examination of a witness, that a document in his possession is material in the case, the court has the inherent power to direct the witness to produce such document, provided, of course, it violates no constitutional right of the witness; e. g., against self-incrimination. That power is exercised almost every day and is necessarily essential to the administration of justice. We know of no rational basis for limiting that power to the time of the trial, for the jurisdiction of a court over a case exists from the time that it is duly pending in court. To exercise such power before the trial would frequently be preparatory to it, expedite it and in fact constitute but a part of it. If the limitation in fact existed, it could be easily circumvented, at least in trials without a jury, by setting the case for trial, calling the witness, directing him to produce the required document and then postponing the hearing until full opportunity for inspection were given. Thus the court could do indirectly what it could not do directly. No such indirect method is necessary, we think. The power mentioned must, accordingly, reside in the court before as well as during the trial. Arbitrary exercise thereof would not, of course, be permitted. An order of production of documents could not be justified, unless some legitimate object would be thereby attained, but it would seem to be clear that when such documents are necessary for the purpose of properly

preparing and presenting a case to the court, as in the case at bar, the making of such order would simply be one of the legitimate steps in the administration of justice. This phase has been discussed by the courts, though under different facts. In the case of Fenno v. Primrose (C. C. A.) 119 Fed. 801, the plaintiff in the action asked for the appointment of an auditor to examine the accounts between the parties, so that the result of the search might be presented to the jury. It was claimed that an order to that effect would infringe upon the right of a trial of the facts by the jury. It was held that the court has the inherent power, in the proper case, to make such order, to the end that the case might be intelligently presented and understood by the ultimate tribunal. In the case of Continental Ins. Co. v. Trust Co., 137 Misc. 28, 244 N. Y. S. 377, this rule was applied to a case where documents in the hands of a third party were sought to be inspected and examined. An order of the character here in question might, as indicated, be unreasonable. We may assume, without deciding, that the court should never, or seldom, make an order previous to trial directing a third person, a stranger to the case, and not connected in interest with the parties thereto, to produce private documents. But this is not such a case. It has long been recognized that a third person may, under proper circumstances, be compelled to produce documents. That, for instance, is true in connection with a bill of discovery, which, in principle, does not differ greatly from a motion to produce. While such bill does not ordinarily lie against a third person not a party to the action, it may lie, if such third person stands in peculiar relation to the parties, or one of them. In Post & Co. v. Railroad, 144 Mass. 341, 346, 11 N. E. 540, 59 A. R. 86, the court said:

"In bills for relief, persons other than the principal defendants, who are connected with the subject of the suit, or are in possession of documents which concern the litigation, have sometimes been made parties for the purpose of obtaining a discovery of facts and documents from them."

And in Griesa v. Life Ins. Co., 169 Fed. 509, 514, (C. C. A.) the court said:

"Any person interested in the action at law and having possession of the evidence sought by the discovery may properly be made defendant to such a bill * * *. Agents have been made parties to bills of discovery to obtain evidence for use in an action at law against their principal."

In the case of Marion National Bank v. Admx., 88 Ky. 428, 11 S. W. 300, the court, in discussing the question of the production of documents before trial, distinctly stated that though they might be in the hands of a third party, they might be directed to be produced. The court said:

"Also a party to a suit may, by the court's rule, compel a person, not a party to the suit, to produce into court any documents in his possession to which such party has either an exclusive right or right in common with his adversary or other person; proper orders being taken for the preservation of such documents, and the restoration of them to the persons who are required to surrender them, and who have a right to their custody."

The requisites mentioned in these cases exist, we think, in the case at bar. The county clerk is not the owner of the affidavits in question. He is but a trustee (People v. Hartnett, 224 App. Div. 127, 230 N. Y. Supp. 28), or agent. He holds, as it were, the muniments of title to the office of sheriff, and holds them in trust for the people and for the contestants to that office, and in that sense is a party in interest in this action. The documents are of a public nature, which, upon proper showing of interest the relator is entitled to see, and there can be no possible reason that we can see, why the rule stated in the Kentucky case should not be applied here. And that the method of procedure there stated is proper is, we think, also pointed out by Greenleaf on Evidence, who in discussing the subject of production of public documents, and differentiating be-

tween cases where a case is pending and where not, says in Section 477:

"The motion for a rule to inspect and take copies of books and writings, *when an action is pending,* may be made at any stage of the cause, and is founded on an affidavit, stating the circumstances under which the inspection is claimed and that an application therefor has been made to the proper quarter, and refused."

Bowden v. Webb, 116 Ark. 310, 173 S. W. 181, too, we think, is in point. In that case the judge in chambers, upon motion made by the contestant in an election contest, directed the election commissioners who had the custody of the poll books, to produce the books in court and permit inspection of them. The order directing inspection was upheld, the order directing relinquishment was annulled. The court seems to hold that the court, as distinguished from the judge in chambers, has the inherent power to direct the placing of the books—which would seem to include the giving the opportunity for inspection—in such place as the court might deem proper; that the power of the judge in chambers is however limited and must be given by statute. It is interesting to note that the power of the latter, namely, the judges in chambers, is held to have been given by a statute which gave him, as well as the court, the power to require *a witness* to produce documents—a power necessarily inherent in the court. Among other things it was said:

"The poll books being, as we have already seen, public records, subject to inspection by interested parties, it cannot be doubted that the circuit judge in vacation has the power to require the officers to discharge their duty by allowing a reasonable opportunity to those who are contestants, and thus interested in the result of the election, to inspect them. * * * It is said here in argument that the effort of the contestants to obtain an inspection of the poll books is a mere 'fishing expedition,' which neither the court nor the judge could give any aid to. That is not a correct

characterization of the proceedings, for the contest is a bona fide one, so far as anything to the contrary appears, and there is an allegation of fraud in the election. An inspection of the records is indispensable in a contest, for they are presumptively correct, until overturned by evidence showing that they are not correct. Powell v. Holman, 50 Ark. 85, 6 S. W. 505; Condren v. Gibbs, 94 Ark. 478, 127 S. W. 731. Contestants are entitled to see the poll books and to have the election commissioners produce them as evidence, so that the presumption of their correctness may be overcome by other testimony. It was within the power, therefore, of the circuit judge to order the production of the poll books to be used as evidence in the case, and the commissioners have no legal right to deny the contestants the privilege of inspecting those records.''

The relator herein has, accordingly, a simple and expeditious remedy herein, by making a motion in the contest case, supported by affidavit, making the character of showing of interest already stated above. If such showing is made, the motion should be granted, giving the county clerk proper notice, and opportunity to be heard. The court may, of course, affix reasonable and proper conditions to the inspection, by providing, for example, that it shall be done in the presence of a guard, or master, or both parties to the contest.

Inasmuch as the procedure in mandamus and the procedure here pointed out are very similar, it may be that the trial court, in view of the fact that it takes judicial notice of the contents of its own records, might, in its discretion, have treated the petition for mandamus, as a motion in the contest case, provided, of course, that the character of interest outlined herein is in fact shown by the pleadings in that case. But we cannot say that it should have done so, particularly in view of the fact that we have no means of knowing what the allegations in the contest case are.

The judgment herein should be accordingly affirmed and it is so ordered.

*Affirmed.*

KIMBALL, Ch. J., and RINER, J., concur.