Argued April 7, affirmed June 17, 1954

# STATE OF OREGON *v.* BRANTLEY
271 P. 2d 668

*Walter D. Nunley,* District Attorney, Jackson County, of Medford, argued the cause for appellant. With him on the brief was J. V. McGoodwin, Deputy District Attorney, of Medford.

*Edward C. Kelly,* of Medford, argued the cause and filed a brief for respondent.

Before LATOURETTE, Chief Justice, and WARNER, ROSSMAN and PERRY, Justices.

PERRY, J.

The grand jury of Jackson county, Oregon, indicted the defendant Gene R. Brantley, the charging part of the indictment reading as follows:

> "That said Gene R. Brantley on the 25th day of August, 1952, in said County of Jackson and State of Oregon, then and there being, did then and there falsely and feloniously, with intent to defraud, knowingly publish as genuine a certificate of nomination certifying the nomination of Gene R. Brantley as an independent candidate for County Judge of Jackson County, upon which said certificate of nomination there was forged names of electors of Jackson County, Oregon, certifying said nomination, to-wit: E. R. Hoppe, Raymond Note, George Anderson, R. J. Otto, R. C. High and John Lewis, all of which he, the said Gene R. Brantley, then and there knew, contrary to the statutes in such cases made and provided, and against the peace and dignity of the State of Oregon."

The defendant challenged the indictment by demurrer on the following grounds:

> "Comes now the defendant, Gene R. Brantley, by his attorney, Edward C. Kelly, and demurs to the indictment returned herein upon the following grounds and for the following reasons, to-wit:
>
> "1. That said indictment does not substantially conform to the requirements of Chapter Seven, Title 26, O. C. L. A. 1940.
>
> "2. That more than one crime is charged in said indictment.
>
> "3. That the facts stated in said indictment do not constitute a crime.
>
> "The particulars of said grounds of demurrer are as follows:
>
> "1. The words 'with intent to defraud' do not conform to the requirements of Chapter Seven

of Title 26 of the Code for the reason that the charge contained in the indictment is not one within the particulars specified in Section 23-568 and hence the provisions of Section 23-568 are not applicable. Said words, therefore, do not inform the defendant of whom it is alleged he intended to defraud or who it is alleged was defrauded, and the alleged act is, therefore, not charged in a clear and distinct manner and is not direct and certain.

"2. The words 'knowingly publish as genuine' do not charge a particular act and do not inform the defendant of the particular circumstances of the crime charged.

"3. The words 'a certificate of nomination certifying the nomination of Gene R. Brantley as an independent candidate for County Judge of Jackson County' do not charge the particular circumstances of the crime alleged to have been committed in a clear or distinct manner or with any degree of certainty. Likewise, the words 'upon which said certificate of nomination' as to said alleged certificate of nomination do not charge the particular circumstances in a clear and distinct manner and with certainty.

"With reference to the ground of demurrer that said indictment charges more than one crime, the particulars of said charge are that it is alleged that on said alleged certificate of nomination there were forged names of six alleged persons and said indictment, therefore, alleges a separate alleged crime as to each of said persons.

"The particulars of the ground of demurrer that the facts stated do not constitute a crime are:

"(1) The particular writings which may be the subject of forgery under Section 23-560 O. C. L. A. 1940, are specifically named and enumerated in said section. By implication, all other writings are excluded. None of the writings specifically enumerated and set forth include certificates of nomination or other election matters. The statute prohibits

knowingly uttering or publishing as true or genuine any such false, altered, forged or counterfeited record, writing, instrument or matter, the word 'such' referring to the particular writings previously referred to in the section.

"Since the certificate of nomination referred to in the indictment is one certifying the nomination of the defendant as an independent candidate for County Judge of Jackson County, the words 'certificate of nomination' could only refer to those authorized and provided for in Sections 81-1003—1008, O.C.L.A. 1940 inclusive. These are obviously matters relating to election of public officer, and any offense with reference thereto would normally be found in the election code. There are no penal provisions in Chapter Ten of Title 81 of the Code, which are the sole sections in the Code relating to certificates of nomination.

"It is significant that with reference to initiative, referendum and recall petitions the Legislature has enacted certain penal statutes set forth in Chapter 24 of Title 81 of the Code. It will be observed that in Section 81-2401, O. C. L. A. 1940, it is made unlawful for any person to circulate or cause to be circulated any referendum, recall or initiative petition knowing the same to contain false, forged or fictitious names. Violations of the statutes under Chapter 4, Title 81 are specifically made misdemeanors with maximum punishment of $100.00 fine and thirty days imprisonment. Obviously, the Legislature did not consider such offenses to be within Section 23-560.

"Moreover, the Corrupt Practices Act, Chapter 25, Title 81, of the Code, contains no provisions applicable to the facts stated in the indictment.

"The writings enumerated in Section 23-560 obviously do not include certificates of nomination. The certificates of nomination are not 'the certificate, return or attestation of any clerk, notary public or other public officer, in relation to any matter wherein such certificate, return or attesta-

tion may be received as legal evidence', are not 'any note, certificate or other evidence of debt issued by any officer of the state, county, town or other municipal or public corporation therein', are not 'any application to purchase state lands or assignment thereof, contract, charter, letters patent, deed, lease, bill of sale, will, testament, bond, writing obligatory, undertaking, letter of attorney, policy of insurance, bill of lading, bill of exchange, promissory note, evidence of debt, or any acceptance of a bill of exchange endorsement, or assignment of a promissory note, or any warrant, order or check, or money or other property, or any receipt for money or other property, or any acquittance or discharge for money or other property, or any plat, draft or survey of land,' and is not, from the facts alleged in the indictment, and could not be, in any event, a public record.

"(2) The indictment does not allege facts of the alleged publication of the alleged certificate of nomination showing that such certificate, if genuine, might be of legal efficacy or the foundation of legal liability.

"(3) The indictment does not allege the nature or tenor of the instrument, the certificate of nomination, alleged in the indictment, or set forth such instrument in said indictment."

The trial court sustained the demurrer of the defendant and the State has appealed.

The State earnestly contends that the facts set forth in the indictment do constitute the crime of uttering a forged instrument, the basis of their argument being that § 23-560, OCLA, which reads as follows:

"If any person shall, with intent to injure or defraud any one, falsely make, alter, forge, or counterfeit any public record whatever, or any certificate, return, or attestation of any clerk,

notary public, or other public officer, in relation to any matter wherein such certificate, return, or attestation may be received as legal evidence, or any note, certificate, or other evidence of debt issued by any officer of this state, or any county, town, or other municipal or public corporation therein, authorized to issue the same or any application to purchase state lands or assignment thereof, contract, charter, letters patent, deed, lease, bill of sale, will, testament, bond, writing obligatory, undertaking, letter of attorney, policy of insurance, bill of lading, bill of exchange, promissory note, evidence of debt, or any acceptance of a bill of exchange, indorsement, or assignment of a promissory note, or any warrant, order, or check, or money, or other property, or any receipt for money or other property, or any acquittance or discharge for money or other property, or any plat, draft, or survey of land; or shall, with such intent, knowingly utter or publish as true or genuine any such false, altered, forged, or counterfeited record, writing, instrument, or matter whatever, such person, upon conviction thereof, shall be punished by imprisonment in the penitentiary for not less than two nor more than twenty years." (now ORS 165.105)

includes within the definition of the words of the statute, "public record", a certificate of nomination for the candidacy of a person seeking public office as provided in § 81.1007, OCLA, as amended, now ORS 249.770, and, therefore, being an instrument subject to forgery, the offering of the certificate of nomination, purportedly signed by the individual electors, but being in fact not the signatures of the electors, constituted the uttering of a forged instrument within the terms of the statute.

Also, the State earnestly contends that the portion of the above statute relative to uttering a forged instrument which reads as follows: "Or shall, with

such intent, knowingly utter or publish as true or genuine any such false, altered, forged or counterfeited record, writing, instrument, or *matter whatever,* \* \* \*''*, [italics ours] includes within the term "or matter whatever" any forged instrument, regardless of whether or not the instrument uttered is included in the specific matters or things subject to forgery in the body of the statute.

■■ We cannot adopt this latter contention of the State, however, for the reason that the words "matter whatever" standing alone and not in conjunction with the specific matters made subject to the crime of forgery in the statute are so indefinite in their scope that it would be impossible to determine what acts of false and fraudulent uttering were intended by the legislative body to be lawful and what were intended to be criminal, making this portion of the statute void for indefiniteness. "A valid criminal law must definitely show with reasonable certainty what acts or omissions the law-making body intended to prohibit and punish: 1 Cyclopedia of Criminal Law, Brill, § 62. But reasonable definiteness in view of the conditions is all that is required: *State v. Lawrence,* 9 Okl. Cr. 16 (130 Pac. 508); *State v. Schaeffer,* 96 Ohio St. 215 (117 N.E. 220, Ann. Cas. 1918E, 1137, L.R.A. 1918B, 945) \* \* \*''. *State v. Bailey,* 115 Or 428, 432, 236 P 1053.

■■ While the rule of the common law, that penal statutes are to be strictly construed, has no application in this state, and all its provisions are to be construed according to the fair import of their terms with a view to effect its objects and to promote justice (§ 23-106, OCLA, now ORS 161.050), this statute does not permit an enlargement of a statute by construction,

*Kirk v. Farmers' Grain Agency,* 103 Or 43, 202 P 731; and the danger of enlarging a statute by judicial construction is pointed out forcibly by Mr. Chief Justice Marshall in the case of *United States v. Wiltberger,* 5 Wheat. 76, 96, 5 LE 37, where he said:

"* * * To determine that a case is within the intention of a statute, its language must authorize us to say so. It would be dangerous, indeed, to carry the principle, that a case which is within the reason or mischief of a statute, is within its provisions, so far as to punish a crime not enumerated in the statute, because it is of equal atrocity, or of a kindred character, with those which are enumerated. If this principle has ever been recognised [sic] in expounding criminal law, it has been in cases of considerable irritation, which it would be unsafe to consider as precedents forming a general rule for other cases."

In this matter, therefore, to avoid invalidating and to give force to the words of this statute relative to the uttering and publishing of a false and fraudulent matter or thing, we are constrained to apply the rule of statutory construction ejusdem generis "where general words follow the enumeration of particular classes of persons or things, the general words will be construed as applicable only to persons or things of the same general nature or class as those enumerated. The rule is based on the obvious reason that if the legislature had intended the general words to be used in their unrestricted sense they would have made no mention of the particular classes. It has been held especially applicable to penal or criminal statutes, and statutes which partake of the nature of criminal process". 82 CJS 658, Statutes, § 332 b. In this connection it is to be noted that the legislature in adopting the revised statutes of this state in 1953 in setting forth

§ 23-560, OCLA, set forth in ORS 165.105 the matters and things subject to forgery, and in ORS 165.115, relative to the crime of uttering forged instruments, provided that the false or forged instrument to be uttered was the "record, writing, instrument or other matter specified in ORS 165.105".

Since, as we have pointed out, the crime of uttering and publishing a false and fraudulent record, writing, instrument or other matter must be one that is made subject to forgery by the statute, we must now consider whether or not a certificate of nomination for the candidacy of a person seeking public office before the same has been filed with the county clerk is a public record within the meaning of the criminal statute.

■ "A 'public record', strictly speaking, is one made by a public officer in pursuance of a duty, the immediate purpose of which is to disseminate information to the public, or to serve as a memorial of official transactions for public reference". *State v. Grace,* 43 Wyo 454, 5 P2d 301, 303; and to the same effect see also *Robison v. Fishback,* 175 Ind 132, 93 NE 666, *People v. Purcell,* 22 Cal App 2d 126, 70 P2d 706.

Black's Law Dictionary 3rd Edition, page 1506, defines "public record" as follows:

"A record, memorial of some act or transaction, written evidence of something done, or document, considered as either concerning or interesting the public, affording notice or information to the public, or open to public inspection."

■ However, apart from general definitions of a "public record", ORS 249.820 definitely sets forth

when a certificate of nomination becomes a public record. This statute reads as follows:

"All certificates of nominations, * * *, as soon as filed, shall be public records. They shall be open to public inspection under proper regulations. * * *"

The statute itself determines that until such time as the certificate of nomination has passed from the hands of the person in possession thereof to the county clerk, the public in general has no interest therein. Therefore, the forgery of a certificate of nomination must be the forgery of that document after it has become such a public record by being filed, and not before.

The indictment in this case as hereinbefore set out does not charge the uttering of a forged public record, but charges the uttering of a forged private record. Since the indictment fails to charge a crime, it is unnecessary for us to consider the other matters raised by the demurrer.

The decree of the circuit court sustaining the demurrer to the indictment is affirmed.