**STATE of Iowa, Appellee,**

v.

**Roger BARNHOLTZ, Barnholtz Automotive Group, Inc., and Bonnie Barnholtz, Appellants.**

**No. 98–1115.**

Supreme Court of Iowa.

July 6, 2000.

Linda Del Gallo, State Appellate Defender, and Dennis D. Hendrickson, Assistant State Appellate Defender, for appellants.

Thomas J. Miller, Attorney General, Martha E. Boesen, Assistant Attorney General, Thomas J. Ferguson, County Attorney, and Linda Hall, Assistant County Attorney, for appellee.

LAVORATO, Justice.

In this appeal by three defendants, the principal issue is whether a damage disclo-

sure statement for a 1992 Mazda automobile and an application for certificate of title for a 1976 Buick automobile are public documents within the meaning of Iowa Code section 718.5 (1995). Section 718.5 makes it a crime for a person, having no right or authority to do so, to make a public document. A jury convicted (1) the defendant, Roger Barnholtz, of violating this statute in connection with his execution of the damage disclosure statement; and (2) the defendants, Bonnie Barnholtz and Barnholtz Automotive Group, Inc., in connection with the execution of the application for certificate of title. We hold such documents under the circumstances of this case are not public documents and therefore reverse the defendants' convictions.

The jury also convicted Bonnie of one count of forgery and Barnholtz Automotive of two counts of theft in the second degree and four counts of forgery. We affirm Bonnie's forgery conviction. We also affirm Barnholtz Automotive's convictions of one count of theft and one count of forgery but reverse as to the remaining counts.

On September 8, 1997, the State charged Barnholtz Automotive with the following offenses:

(1) one count of second-degree theft (count I), in violation of Iowa Code sections 714.1(3) and 714.2(2);

(2) one count of second-degree theft (count II), in violation of Iowa Code sections 714.1(2) and 714.2(2);

(3) one count of falsifying a public document (count IV), in violation of Iowa Code section 718.5;

(4) four counts of forgery (counts V, VI, VII, and VIII), in violation of Iowa Code section 715A.2(1)(b); and

(5) one count of fraudulent practice in the third degree (count IX), in violation of Iowa Code sections 321.49, 321.97, 714.8(10), and 714.11.

In the same trial information, the State charged Roger with one count of falsifying a public document (count III), in violation of Iowa Code section 718.5 and charged Bonnie with one count of falsifying a public document (count IV), in violation of Iowa Code section 718.5 and two counts of forgery (counts VI and VIII), in violation of Iowa Code section 715A.2. Roger is the president and Bonnie is the secretary/treasurer of Barnholtz Automotive.

Before submitting the case to the jury, the district court sustained Barnholtz Automotive's motion for judgment of acquittal as to count IX—fraudulent practice in the third degree—and overruled motions for judgment of acquittal on the remaining counts as to all defendants. The jury returned guilty verdicts on all the remaining counts against Barnholtz Automotive.

The jury convicted Roger of falsifying a public document (count III) and convicted Bonnie of the same offense (count IV) and of one count of forgery (count VIII).

The district court fined Barnholtz Automotive $5000 for each conviction. *See* Iowa Code §§ 902.9, 903.1. The district court sentenced Roger to an indeterminate term of imprisonment not to exceed five years for falsifying a public document. *See* Iowa Code §§ 718.5, 902.9(4).

The court sentenced Bonnie to an indeterminate term of imprisonment not to exceed five years for falsifying a public document and an indeterminate term of imprisonment not to exceed two years for forgery. *See* Iowa Code §§ 718.5, 715A.2(2)(b), 902.9(4), 903.1(2). The court ran her sentences concurrently and placed her on probation for two to five years.

## I. Falsification of Public Documents.

Iowa Code section 718.5 provides:

A person who, having no right or authority to do so, *makes* or alters *any public document*, or any instrument which purports to be a public document, or who possesses a seal or any counterfeit seal of the state or of any of its subdivisions, or of any officer, employee,

or agency of the state or of any of its subdivisions, commits a class "D" felony. (Emphasis added.)

The State charged and the jury convicted Roger, Bonnie, and Barnholtz Automotive of making a public document, without right or authority to do so. In Roger's case, the alleged public document was a damage disclosure statement for a 1992 Mazda automobile (count III). The signature of an individual purporting to sign on behalf of the seller and buyer was allegedly forged. In the case of Bonnie and Barnholtz Automotive, the alleged public document was an application for a certificate of title to a 1976 Buick automobile (count IV) on which the applicant's signature was allegedly forged. The narrow issue we must decide is whether the damage disclosure statement and the application for a certificate of title are public documents for purposes of section 718.5.

In *State v. Ortega*, 418 N.W.2d 57 (Iowa 1988), we first defined what a public document is for purposes of section 718.5. Before doing so, we set out these familiar rules of statutory construction that would govern our definition:

> The term "public document" is not defined in section 718.5.... Our task, therefore, is to place upon the statute a reasonable construction consistent with the evident legislative intent. Because the statute is penal in nature, it must be construed strictly against the State, with any doubts about its meaning resolved in favor of the accused. As we attempt to discern what activity the legislature intended to proscribe by section 718.5, we must follow the express terms of the statute and not what the legislature might or should have said.

*Ortega*, 418 N.W.2d at 58–59 (citations omitted).

The State had charged Ortega with making false public documents in violation of section 718.5, to wit, ten blank Oregon driver's license forms. *Id.* at 58. We noted that the statute prohibits the unau-thorized creation of public documents. *Id.* at 59. We therefore recognized the ultimate question to be this: "At what point does the creation become a public document?" *Id.*

"[T]he term public document," we said, "is synonymous with 'public record,'" which is a

> "writing ... [that] an officer is required by law to keep or which is intended to serve as a memorial and evidence of something written, said, or done by the officer or public agency."

*Id.* (quoting *Linder v. Eckard*, 261 Iowa 216, 220, 152 N.W.2d 833, 836 (1967)).

We pointed out that "[c]ommentators have uniformly observed that legislation prohibiting the falsification of such documents is aimed at records which evidence the discharge of a duty imposed by law or which serve as a memorial of something *already written, said, or done*." *Id.* (emphasis added). Stated in a different fashion, we observed that

> "[t]he crime of falsification of public records refers to those writings which evidence the *completed acts* of public servants, such as the minutes of courts, public boards, and commissions, or those documents which under the law must be recorded by a public officer...."

*Id.* (quoting 66 Am.Jur.2d *Records and Recording Laws* § 11, at 348 (1973)).

Implicit in these definitions is that, at common law, action by a public officer is necessary to make a record or document a "public record." The rule is often stated as follows:

> A public record, strictly speaking, is one made by a public officer in pursuance of a duty, the immediate purpose of which is to disseminate information to the public or to serve as a memorial of official transactions for public reference.

*Stenstrom v. Harnett*, 131 Misc. 75, 76–77, 226 N.Y.S. 338, 341 (Sup.Ct. 1927), *aff'd per curiam*, 249 N.Y. 606, 164 N.E. 602 (1928); *accord State v. Brantley*, 201 Or. 637, 271 P.2d 668, 672 (1954); *State ex rel.*

*Romsa v. Grace,* 43 Wyo. 454, 5 P.2d 301, 303 (1931).

Therefore, at common law, not every document on file with a public officer or every memorandum made by a public officer is a public document. *People v. Olson,* 232 Cal.App.2d 480, 486, 42 Cal.Rptr. 760, 764 (1965); *Linder,* 261 Iowa at 219, 152 N.W.2d at 835; *Stenstrom,* 131 Misc. at 77, 226 N.Y.S. at 342; *Romsa,* 5 P.2d at 303. For example, at common law,

> [r]eports of private individuals to government officials, even pursuant to statute, correspondence of such officials in matters relating to private affairs of a citizen, although in connection with public business, or memoranda of public officers for their own convenience, are not public documents or records unless made so by statute.

*Stenstrom,* 131 Misc. at 77, 226 N.Y.S. at 342. In the absence of a statute declaring records to be strictly public records, the nature and purpose of the record are guides in determining the class to which the records belong. *Id.;* see also *Village of Evanston v. Gunn,* 99 U.S. 660, 666–67, 25 L.Ed. 306, 307 (1878); *Linder,* 261 Iowa at 219, 152 N.W.2d at 835.

The holding in *Linder* makes clear that there must be some action by a public official to make a document a public record. The question in *Linder* was whether written appraisal reports in the custody of a city clerk were public records. This court said:

> What, then, about the written appraisals which are the subject of this controversy? They were not prepared by a public officer nor by anyone under his control. Although made at the request of the city council, they are merely opinions of value which have no binding effect upon either the city or the property owners. They have not been acted on in any way at this time. No plan for urban renewal has been adopted. No eminent domain proceedings have been instituted.

*Linder,* 261 Iowa at 219, 152 N.W.2d at 835.

No doubt when the damage disclosure statement and the application for certificate of title were filed, they became public documents. This is because statutory law requires some public official to record them. In the case of the damage disclosure document, the Iowa Department of Transportation has that duty. *See* Iowa Code § 321.69(4) (providing that "[t]he department shall retain each damage disclosure statement received and copies shall be available to the public and the attorney general upon request"). In the case of the application for certificate of title, the county treasurer has that duty. *See* Iowa Code § 321.31(2) (providing that "[e]ach county treasurer's office shall maintain a county records system for vehicle registration and certificate of title documents. The records system shall consist of information from the certificate of title . . . .").

■ However, *until* both documents were filed, they were not public records. Until then, the public had no interest in the two documents. Because Roger's, Bonnie's, and Barnholtz Automotive's alleged actions with respect to those documents occurred before the documents were filed, the reach of section 718.5 did not encompass those actions. *See People v. Garfield,* 40 Cal.3d 192, 219 Cal.Rptr. 196, 707 P.2d 258, 260–61 (1985) (holding that falsification of a will before it was filed would not constitute the falsification of a public record within meaning of a statute that provided that no limitations period existed for prosecutions for the falsification of public records because a will is not a public document before it is filed for probate); *People v. Trujillo,* 189 Colo. 23, 536 P.2d 46, 47 (1975) (holding that an application for admission to a state college was not a public record within meaning of a statute that made it a crime to knowingly make a false entry in any public record; statute applied only to records after they were created, received, or used by a public office); *Brantley,* 271 P.2d at 672–73 (holding that a "public record" within statute proscribing the forging of public records

did not include a certificate of nomination not yet in the hands of the county clerk and indictment charging the uttering of forged signatures on a nomination petition did not charge a crime); *cf. Case v. National Life & Accident Ins. Co.*, 66 N.E.2d 270, 272 (Ohio Ct.App.1944) (holding that a "certificate of death when filed in the office of the Secretary of State becomes a public record").

The statutory definition of "public records" in Iowa's open records law is further support for the conclusion we reach. Iowa Code section 22.1(3) pertinently defines public records to include "all records, documents ... *of or belonging to this state or any county....*" In *City of Dubuque v. Dubuque Racing Association*, we held that

> [b]y statutory definition, a public record is a record or document *of or belonging to* the state or local government. A document *of* the government is a document that was produced or originated from the government. Documents *belonging to* government would include those documents that originate from other sources but are held by public officers in their official capacity.

420 N.W.2d 450, 453 (Iowa 1988).

The Colorado Supreme Court interpreted a falsification-of-public records statute with the words *records of or belonging to any public office* in *People v. Trujillo*, 185 Colo. 14, 521 P.2d 769 (1974). In that case the defendant submitted a false employment application for a government position. Concluding that the statute did not cover the application, the court reasoned that the statute was designed to inhibit the falsification of records that were prepared by and in the custody of a public agency. *Trujillo*, 521 P.2d at 770. Significantly, the court said:

> Summarizing, then, we hold that a violation of [the statute] occurs only where a person falsifies or otherwise corrupts a record which is in, or is required by law to be in, the custody or control of a public agency *at the time of falsification*. The statute does not ap-

ply to a situation like that present here, where, when falsified, the application for the position sought did not belong to any public office within the state.

*Id.* at 770–71 (emphasis added). We think the same reasoning applies to the definition of public records in Iowa Code section 22.1(3).

■ As mentioned, Iowa Code section 718.5 makes it a crime for a person to make or alter a public document when that person has no right or authority to do so. We point out that the statute applies to unauthorized documents, not false documents. Therefore, a person who is authorized to make a public document but places false information in the document may have committed a crime, but not necessarily under section 718.5. *See, e.g.*, Iowa Code § 321.97 (a person who knowingly makes a false statement in an application for a certificate of title is guilty of a fraudulent practice).

## II. Corporate Culpability.

The jury also found Barnholtz Automotive guilty of two counts of theft in the second degree (counts I and II) and four counts of forgery (counts V, VI, VII, and VIII). Barnholtz Automotive contends there was insufficient evidence to convict it of counts I, V, and VI.

Barnholtz Automotive further contends that as a matter of law it could not be convicted of counts II, VII, and VIII. It reasons that specific intent is an element of those offenses, and a corporation cannot legally be convicted of a crime with such an element.

Iowa Code section 703.5 pertinently provides:

> A public or private corporation ... shall have the same level of culpability as an individual committing the crime when any of the following is true:
>
> . . . .
>
> 2. The conduct or act constituting the offense is committed by an agent,

officer, director, or employee of the accused while acting within the scope of the authority of the agent, officer, director, or employee and in behalf of the accused and when said act or conduct is authorized, requested, or tolerated by the board of directors or by a high managerial agent.

"*High managerial agent*" means an officer of the corporation . . . or other agent in a position of comparable authority with respect to the formulation of policy or the supervision in a managerial capacity of subordinate employees.

### A. Insufficiency of the evidence.

**1. Count I (theft in the second degree).** The basis for this offense was that Barnholtz Automotive had received, by deception, cash and a trade-in from a customer. The alleged deception was the concealment of the true mileage of a Plymouth automobile that the customer had purchased.

■ Barnholtz Automotive argues that the salesman—Jeff Jones—with whom the customer dealt made the representation of low mileage. Barnholtz Automotive further argues that (1) there was no showing that Jeff Jones was a high managerial agent, and (2) there was no proof that his actions were "authorized, requested, or tolerated by the board of directors or by a high managerial agent." We agree with both contentions and conclude that the evidence was insufficient to sustain a conviction of this offense.

■ **2. Count V (forgery).** The State's theory for count V was that Barnholtz Automotive executed a title to a 1984 Ford Escort, purporting it to be the act of Daniel Grey, who did not authorize that act. A handwriting expert for the State could not identify the author of "Daniel Grey" on the certificate of title. Nor was there any proof that the board of directors or a high managerial agent had authorized, requested, or tolerated the forgery. We

agree the evidence was insufficient to sustain a conviction of this offense.

■ **3. Count VI (forgery).** In this count, the State charged both Barnholtz Automotive and Bonnie with forgery. The State's theory for count VI was that Barnholtz Automotive, through Bonnie, had forged the signature of "Randy Gray" to the title assignment for a 1985 Ford LTD. The State's handwriting expert testified that in his opinion the signature of "Randy Gray" was *probably* made by Bonnie Barnholtz. The expert admitted that "probable" means room for doubt because "irreconcilable differences are present." Given this weak testimony, it is not surprising that the jury found Bonnie not guilty. And given this verdict, there was therefore no evidence that a high managerial agent of the corporation had authorized, requested, or tolerated the forgery. Additionally, there was no evidence that the board of directors of the corporation had authorized, requested, or tolerated the forgery. We agree the evidence was insufficient to sustain Barnholtz Automotive's conviction of this offense.

■ **B. Specific intent.** Count II alleged that Barnholtz Automotive had committed theft in the second degree for misappropriation of property of another in its control, more specifically overcharges for license and title fees. Count VII alleged that the corporation had committed forgery of a title certificate to a 1985 Ford LTD. Count VIII alleged that the corporation had committed forgery of a title certificate to a 1985 Plymouth van.

Barnholtz Automotive contends that, because the three counts were submitted to the jury as specific-intent crimes, the jury—as a matter of law—could not convict it of these offenses. The corporation relies on *Stewart v. Waterloo Turn Verein,* in which this court held "that a corporation cannot be charged criminally with a crime involving malice, or the intention of the offense." 71 Iowa 226, 230, 32 N.W. 275, 277 (1887).

The short answer to this contention is that Iowa Code section 703.5 has changed the law. By statute, a corporation now has—under certain circumstances—the same level of culpability as an individual committing the crime. The statute makes no distinction between general intent and specific intent crimes. We therefore reject Barnholtz Automotive's argument.

### III. Disposition.

In sum, we conclude that the damage disclosure statement and the application for certificate of title were not public documents at the time the defendants allegedly took action with respect to them. Because Iowa Code section 718.5 does not cover those actions, we reverse the convictions of all three defendants as to counts III and IV.

Because we conclude the evidence was insufficient to convict Barnholtz Automotive on counts I, V, and VI, we reverse its convictions on those counts. We reject Barnholtz Automotive's argument that a corporation cannot be convicted of offenses having a specific intent element. Accordingly, we affirm its convictions on counts II, VII, and VIII.

We note that Bonnie raises no issue regarding her conviction for forgery (count VIII). We therefore affirm her conviction on that count.

**AFFIRMED IN PART; REVERSED IN PART.**

All justices concur except NEUMAN, J., who takes no part.