## CASE, Plaintiff-Appellee, v. NATIONAL LIFE & ACCIDENT INSURANCE COMPANY, Defendant-Appellant.

Ohio Appeals, Second District, Montgomery County.

No. 1788.   Decided February 12, 1944.

Charles Brennan, Dayton, for plaintiff-appellee.
Beigel & Mahrt, Dayton, for defendant-appellant.

## OPINION

By BARNES, P. J.

The above entitled case is now being determined as an error proceeding by reason of defendant's appeal on questions of law from the judgment of the Court of Common Pleas of Montgomery County, Ohio.

The plaintiff-appellee is the widow of Joseph Raymond Case and beneficiary under a policy of insurance issued December 9, 1940.

The insured, Joseph Raymond Case, died on May 1, 1941.

Proof of death was submitted May 9, 1941 and claim rejected on the basis of a "sound health" clause in the policy requiring the insured to be in "sound health" on the date of the issuance thereof.

Suit was filed on the policy on January 6, 1942 and on February 17, 1942 an answer was filed setting forth the affirmative defense of unsound health on the date of issuance. No further pleading was filed until the day of trial, at which time counsel for plaintiff, on leave of the court, filed a reply denying the averments of the answer.

The case was tried to a jury resulting in a verdict for the plaintiff-appellee.

Motion for new trial was filed, overruled and judgment entered on the verdict for the full amount claimed. Within statutory time defendant filed notice of appeal on questions of law.

Appellant's assignments of error are set out under seven separately stated and numbered specifications. Assignments Nos. 1 and 2 complain that the court was in error in not sustaining defendant's motion to dismiss plaintiff's petition on the opening statement of counsel for plaintiff, on the ground that plaintiff had filed no reply to defendant's affirmative defense, and second, that the court was in error in permitting plaintiff to file a reply at the close of the opening statement of counsel for the appellee.

We have no difficulty in arriving at the conclusion that the trial court was not in error in overruling motion to dismiss and permitting plaintiff to file reply after being in default for many months.

This is a question entirely within the discretion of the trial court and a reviewing court will not disturb, unless there was evidence of an abuse of discretion.

In the interest of correcting a prevailing tendency among the lawyers in Montgomery County, we would suggest that some action be taken to avoid defaults, etc.

Assignments Nos. 3, 4 complain that the court was in error in overruling the motion for directed verdict and for judgment notwithstanding the verdict.

Assignment No. 5 complains that the court was in error in overruling motion for new trial on three grounds; (a) conduct on the part of counsel for plaintiff in his argument to the jury by making reference to the disparity in financial conditions between the plaintiff and the defendant.

The argument of counsel does not appear in the Bill of Exceptions and therefore, the ground for this particular complaint is not manifest; (b) complaint is made that the verdict appears to have been given entirely under the influence of prejudice engendered by such improper argument. Again we say that the record presents no evidence of any improper argument and the remainder of the Bill does not suggest to us that the jury acted under the influence of prejudice or passion; (c) that the verdict was not sustained by sufficient evidence and contrary to law. This complaint is identical with assignment No. 6.

Assignment Nos. 3, 4 and 6 require a careful reading of the record. This we have done.

The sole and only question requiring serious consideration is whether or not plaintiff's deceased husband was in good health at the time the insurance policy was issued to him on his life.

This issue was raised through an affirmative averment in defendant's answer.

The insurance policy contained a provision that no obligation was incurred by the insurance company if the insured, at the time of the issuing of the policy, was not in good health.

This being an affirmative defense, the burden is upon the defendant to prove lack of good health on the part of the insured. After the jury was impaneled, plaintiff very briefly introduced sufficient evidence to sustain the allegations of her petition. Thereafter the defendant introduced the testimony

of Paul Kantor, the soliciting agent procuring the application for a policy of insurance and two doctors, towit: Dr. Edward A. Millonig and Dr. Harry Reck.

We find nothing in the testimony of Paul Kantor that in any way supports the affirmative averments of defendant's answer touching the question of good health. Dr. Edward A. Millonig was an interne at the St. Elizabeth Hospital, Dayton, Ohio. Joseph Raymond Case entered the hospital on April 27, 1941 and died about seven o'clock in the evening on May 1st, 1941. His ailment was diagnosed as allergic asthma.

His symptoms were difficulty in breathing, intermittent coughing, and complaint of pain in the chest. Following the death of Mr. Case, a post mortem was made by one of the internes at the hospital. This person was not available as a witness, having left Dayton many months previous to the trial. He made a rather complete report of his findings to which he signed his name and the same was attached to the hospital records. All hospital records, including the post mortem, were introduced in evidence under objection, although we are inclined to the view that the objection was subsequently withdrawn; but at all times it was maintained by counsel for the plaintiff that the report of the post mortem could not be considered as substantive evidence. Dr. Millonig signed the death certificate and therein he stated that the principle cause of death was aneurism of aorta and that the contributory cause was atresia of traches due to pressure from aneurism; cardio vascular syphilis. Dr. Millonig testified that the data or the statements made by him in the death certificate were obtained almost exclusively from the report of the post mortem. As heretofore stated, his diagnosis had been allergic asthma and nothing had been presented prior to the post mortem suggesting syphilis or any veneral disease. The doctor also testified that the doctor making the post mortem did not, in his report, make any finding as to syphilis.

The report is in technical language and reading it as laymen we would be unable to determine any of the findings translated into everyday language. It is evident that Dr. Millonig, in his testimony, interprets to the court and states that certain findings disclosed in the post mortem are almost always results of syphilis. Dr. Reck was called as a witness but he added very little on the question of good health except the statement that he, Dr. Reck, was an interne at the hospital and that he took care of Mr. Case on a prior occasion when he was admitted for treatment for an asthmatic attack. At this time the asthma was diagnosed as Asthmatic bronchitis. Both doctors testified that the patient, Joseph

Raymond Case, had reported when he was admitted to the hospital that he had had similar symptoms some eight years previous. Mr. Case did not define his symptoms as asthma but rather gave the symptoms which the doctor diagnosed as asthma. Following the close of defendant's case, plaintiff called a number of lay witnesses, all of whom testified to the fact that Joseph Case had been in sound health, so far as they knew, during the period of time that they had known him. Mr. and Mrs. Case had been married in '25. She stated that he had always been in good health with the exception of the two or three times when he had gone to the hospital. All of these followed a time of the issuing of an insurance policy. She said that he had never gone to a physician or had a physician call at the home to attend him. She did not know the seriousness of his sickness until the day of his death. His daughter, sixteen years old, was also called and she gave testimony substantially the same as that of her mother. Other witnesses had varying means of knowledge through personal acquaintance and contact. None had ever known of his being sick.

The law covering policies of this character is well defined. The trial court correctly charged the jury that if they should find it to be a fact that Joseph Raymond Case was not in sound health at the time the insurance policy was issued that plaintiff could not recover even though it was not known at the time that he was not in good health. The court also gave to the jury a correct definition as to the meaning of the term of good health as follows:

"The court charges you, as the law in this case, that sound health as used with reference to life insurance means that state of health free from any disease or ailment that affects the general soundness and healthfulness of the system seriously and not a mere indisposition which does not tend to weaken or undermine the constitution of the insured."

The vital question to be determined is the correct weight to be given by the reviewing court to the testimony of Dr. Millonig.

From reading the cold type of the questions and answers in the record, we are very much impressed as to the honesty and intelligence of Dr. Millonig.

We interpret his testimony as the only basis for determining unsound health is from information obtained from the post mortem. It must be kept in mind that Dr. Millonig

was not present and did not participate in the post mortem; knew nothing about it except the information that he gets from the report.

It must also be kept in mind that the physician making the post mortem was not called as a witness and therefore, counsel for plaintiff would not have the opportunity of cross-examining him. If the jury were bound to accept this post mortem as one hundred per cent correct, then we would have no hesitancy in determining under the interpretation made by Dr. Millonig that the insured, Joseph Raymond Case, was not in sound health.

We do not find such to be the law.

The most that can be claimed for this evidence is that the certificate of death when filed in the office of the Secretary of State becomes a public record and certified copies thereof, under pertinent sections, become admissible in evidence and prima facie proof of its contents. There has been a growing tendency to admit hospital records with the same probative value. Many courts in Ohio have frowned on any relaxing of the rule which would permit giving probative force to findings or reports of a physician where no opportunity is given to cross-examine. We are referred to the case of Armstrong v. Travelers Insurance Co., 22 C. C. (N. S.) 129. On page 133 Judge Jones, speaking for the court, makes the following observation:

"In the opinion of this court, the action of the court below in this regard was erroneous. The autopsy should not have been admitted as substantive evidence in the case. It purported to have been signed by at least three persons who were not present as witnesses at the trial, and therefore the plaintiff below was denied the privilege of cross-examination of these men, under oath.

Also **Salko, Admx. v Metropolitan Life Ins. Co., 6 O. O.,** 394, second syllabus,

"Testimony of a physician on cross-examination concerning a disease of the insured, which he does not state from his personal knowledge but from the history given him of the case, is hearsay and inadmissible."

**Insurance Co. v Schmidt, 40 Oh St 112,** we find the following:

"The physician made statements, based entirely upon hearsay, which were readily separable from his other statements. The Court instructed the jury that said hearsay statements could not be considered by them."

The case of Humble v. John Hancock Life Insurance Co., 28 N. P. (N. S.) 490 is in point and interesting.

Counsel for appellant have cited us to two cases from foreign jurisdiction, which we have examined. Considering the case in its entirety, we are unable to find that the jury was in error in returning its verdict for the plaintiff.

Judgment of the trial court will be affirmed.

Costs in this court will be adjudged against the appellant and case remanded for collection of costs and such other proceedings as may be required under the law.

HORNBECK and GEIGER, JJ., concur.