CONDREN *v.* GIBBS.

Opinion delivered March 28, 1910.

1. ELECTIONS—TOWNSHIP OFFICES—JURISDICTION IN CONTESTS.—Under Kirby's Digest, § 2860, providing that the county court shall have jurisdiction of contests of county and township offices, that court has jurisdiction of a contest over the office of township road overseer. (Page 480.)

2. SAME—EVIDENCE—CONCLUSIVENESS OF RETURNS.—Though the official returns of an election are not conclusive, they are *prima facie* evidence of the result, and will stand until they are discredited by satisfactory evidence showing that they have not been preserved in manner prescribed by law, or have been tampered with or falsified. (Page 481.)

3. SAME—IMPEACHMENT OF OFFICIAL RETURNS.—The official returns of an election cannot be impeached by parol evidence without production of the ballots themselves if they are in existence. (Page 482.)

4. SAME—IMPEACHMENT OF OFFICIAL RETURNS.—Where the ballots of an election were kept by the election commissioners for six months as required by law, and were then destroyed, no notice having been given to the commissioners to preserve them for a longer period, it is not admissible thereafter to contradict the official returns by parol proof showing how the votes were cast at such election. (Page 483.)

Appeal from Sebastian Circuit Court, Greenwood District; *Daniel Hon,* Judge; reversed.

*T. B. Pryor* and *Holland & Holland,* for appellant.

The official returns are *quasi* records and stand until overcome by affirmative evidence against their integrity. 73 Ark. 193; 50 Ark. 95. The county court has no jurisdiction to determine a contest for a district office. Art. 7, sec. 11, Const. 1874; 68 Ark. 558; 66 Ark. 204. Parol evidence is inadmissible to contradict the returns of an election unless it be shown that the ballots have been tampered with. 53 Pac. 173.

*Jo Johnson,* for appellee.

The testimony of the voter is stronger than that of an election officer. 73 Ark. 187; 50 Ark. 85; 69 Ark. 501. The equivalent of fraud overturns returns. 41 Ark. 111. District overseer is the same as township overseer. Acts 1905, p. 463. When not attacked, the returns are the best evidence. 49 Ark. 238. County court had jurisdiction. 50 Ark. 270.

FRAUENTHAL, J. At the general election for State, county and township officers held on the 14th day of September, 1908, R. L. Condren and W. F. Gibbs were opposing candiates for the office of road overseer of the road district composed of Bass Little Township in the Greenwood District of Sebastian County. The election for this office was held under and by virtue of the act of the Legislature approved April 18, 1905, entitled "An act to provide for election of road overseers and for other purposes" in certain named counties, by which it is provided that all township and district road overseers in the Greenwood District of Sebastian County shall be elected in the same manner and for the same term as township and county officers now elected in the State of Arkansas, and that each political township shall constitute a road district. Acts 1905, p. 463.

The election officers of said Bass Little Township made due and proper returns of said election to the election commissioners of said county. According to the certificate and poll books thus returned, there were 139 votes cast at the election in said township; of these Condren received 65 votes and Gibbs 62 votes for the office of road overseer; and on twelve of said ballots no vote was cast for said office. The election commissioners proceeded

to ascertain and declare the result of said election, and in pursuance thereof delivered to Condren a certificate of his election to said office. Thereupon Gibbs instituted proceedings in the county court to contest said election. The contestant, Gibbs, then proceeded to take his testimony by depositions, which he completed on March 9, 1909. He gave no notice at any time to the county election commissioners that the election of Condren to said office had been contested; and no such notice was given by Condren; and the election commissioners received no written notice from any source of said contest. The ballots and certificates of said election returned to them from said Bass Little Township were retained by the county election commissioners for a period of six months after said election and the returns had been delivered to them, and until March 22, 1909, when they destroyed them in pursuance of the provisions of section 2838 of Kirby's Digest. At the time the contestant took his testimony the said ballots cast at said election were in the custody of said county election commissioners, but no application was made by either party to the proper tribunal to have the same opened; and, as above stated, no notice was given to the election commissioners of the contest so that the ballots should be preserved. At the taking of the testimony on the part of contestant 78 witnesses testified that they had at said election voted for Gibbs for road overseer, and at the time the contestee objected to the testimony of each of these witnesses upon the ground that the returns of the election officers and the ballots were the best evidence, and that these could be impeached only by their introduction, and by evidence that they had not been actually cast as returned. The contest was tried by the county court at its April term, 1909, and a judgment rendered in favor of contestant, from which an appeal was taken by contestee to the circuit court. Upon a hearing of said appeal in the circuit court, a judgment was rendered by that court in favor of the contestant; and from that judgment the contestee prosecutes this appeal.

It is urged by counsel for contestee that the county court is not invested by law with the jurisdiction to try causes involving contest for the office of road overseer; that the statute making provision for the election of a road overseer does not name any tribunal as having jurisdiction in contests for said

office; that on this account the circuit court alone had original jurisdiction to try the contest for this office under section 11 of article 7 of the Constitution. But by section 2860 of Kirby's Digest it is provided: "When the election of any clerk of the circuit court, sheriff, coroner, county surveyor, county treasurer, county assessor, justice of the peace, constable or any other county or township officer, the contest of which is not otherwise provided for, shall be contested, it shall be before the county court."

By the above act of the Legislature, approved April 18, 1905, it is declared that each political township in the county shall constitute a road district, and that a township road overseer shall be elected therefor. From this we are of the opinion that the office of road overseer in the Greenwood District of Sebastian County is a township office. We are, therefore, of the opinion that the county court had the jurisdiction to try the contest of the election of road overseer involved in this case.

The true object and duty of a court trying an election contest case is to ascertain who was in fact elected to the office; but this can only be correctly determined by competent evidence and proof. The same rules of evidence that apply in suits over any property right should be applied to the contest of an election. It is the policy of the law to guard and maintain the purity of the ballot and to lay bare any false or fraudulent returns. But, in order to determine what the true result of the election was, it is necessary to adhere to and apply those rules which the experience of the courts and the law have established for the ascertainment of truth. The election judges, clerks and commissioners are sworn officers, and the returns made by them should be and are considered *prima facie* evidence of the result of the election, although they are not conclusive. As is said by Chief Justice HILL, speaking for this court in the case of *Schuman* v. *Sanderson,* 73 Ark. 187: "Official returns are *quasi* records, and stand until overcome by affirmative evidence against their integrity." *Powell* v. *Holman,* 50 Ark. 85. The poll book and tally sheets made by the election officers and the ballots are primary evidence of the result of the election, and they must stand until they are impeached by competent evidence. They may be impeached by evidence that shows that they have been tampered with and falsi-

fied, but the truthfulness and reliability of the returns must stand until they are discredited by satisfactory evidence showing that they have been tampered with or falsified. McCrary on Elections, § § 503, 504.

There must be evidence showing that the poll book, tally sheets or ballots have not been preserved in manner prescribed by law, or that the ballots have been forged or others substituted for them, or some wrongful act or conduct on the part of the election officers, from which fraud can be inferred, must be shown, before the returns can be discredited and thereby disregarded.

In the case at bar the evidence shows that the returns were duly and properly made, and these and the ballots were preserved in strict accordance with the provisions of the statute. The lower court found that the judges and clerk of the election were supporters of contestee, and voted for him, but there is no testimony of any act or of any conduct on their part indicating fraud or wrong or dereliction of duty. Each of these officers testified to the correctness of these returns and of their acts and conduct in the holding of this election, and that each ballot was counted exactly as it was cast by the voter. The only way that it is attempted to impeach these returns is by the introduction of 78 witnesses who testified that they voted for contestant. The returns show that he received only 62 votes; so that, if this testimony is competent, it would tend to impeach these returns for fraud, and, if true, would successfully discredit them. But under the circumstances of this case is such testimony competent? The returns, consisting of the poll book and tally sheet and the certificate of the vote, are *prima facie* correct. The original ballots are the best evidence of the true result, and will control the canvass and returns of the election; and if these ballots are preserved in manner prescribed by law, they cannot be contradicted by parol evidence, unless it be shown that they have been tampered with or other ballots substituted in their place. McCrary on Elections, § 478; 10 Am. & Eng. Enc. Law § 838; 15 Cyc. 425; *Dixon* v. *Orr,* 49 Ark. 238; *Freeman* v. *Lazarus,* 61 Ark. 247.

"A voter cannot be allowed to testify that he voted for one person when he admits that he cast a ballot which has not since been changed showing that he voted for another person." 15 Cyc. 420.

This rule is founded upon the principle that the ballot is a writing, and so cannot be contradicted by parol evidence. But like other writings it may be shown that the ballot has been changed since it was cast or that another and different ballot has been put in its place. *Behrensmeyer* v. *Kreitz*, 135 Ill. 591.

This can be done by the production, and the impeachment by the witness, of the ballot actually returned by the election officers. If the ballots should be lost or destroyed, then they can be impeached, without actual production thereof, by parol evidence. But such parol evidence is only admissible without production of the ballots when the same have been lost or destroyed during the period that under the law the ballots shall be preserved. For after such period when the ballots should be destroyed under the statute they lose their legal existence as ballots. 10 Am. & Eng. Ency. Law, 733; 15 Cyc. 428.

By section 2838 of Kirby's Digest it is provided that the ballots shall be retained by the election commissioners for a period of six months, after which time they shall be destroyed, unless the commissioners shall be sooner notified in writing that the election of some person voted for at such election and declared to have been elected has been contested, in which event the ballots shall be preserved for use as evidence in such contest. Inasmuch as the returns of the election are *prima facie* evidence of the result thereof, the party attacking the returns should give the notice of the contest to the commissioners, to the end that the ballots may be preserved for the purpose of impeaching the returns. If the contestant has not done this, either through negligence or design, he cannot be heard to complain. The ballots were in existence and in the custody of the election commissioners at the time that contestant took his testimony, and if he had so desired he could have taken the proper steps to have had them preserved. Failing in having the ballots produced, he cannot, by parol evidence of the witness as to how he voted, impeach the ballot. Such a rule would result in injustice, and would deprive the contestee of the opportunity of contradicting the witness by the ballot itself. The witness may be honestly mistaken, and may through error have cast his ballot differently from what he intended, or his testimony as to whom he voted for may not be true.

In the case at bar, according to the returns of the election officers, there were 62 votes cast for the contestant. Upon the trial of this contest 78 witnesses testified that they voted for contestant. Now, each of the ballots was numbered, and the corresponding number was set opposite the name of the voter in the poll book. So that, by the production of the ballot, it could have been determined what voter cast it. In this case it could have been determined who were the 16 voters who testified that they voted for contestant but whose ballots were returned by the election officers as cast for contestee. By the production of the ballots it could then have been seen whether error had been made, and the election officers could then have more definitely said, and probably by other evidence or circumstances have shown, that the witness was in error or untruthful. But, without the production of the ballots, it was impossible to tell the voter who testified he voted for contestant and whose ballot was returned as cast for contestee. It was impossible under these circumstances to ascertain the truth by testimony to which the contestee was entitled, as well as upon the testimony adduced by contestant.

It follows that where the election officers have preserved the ballots in the manner and for the period prescribed by law, and after such time has expired the ballots have been destroyed by virtue of and in pursuance of the statute, the voters cannot be allowed to say they voted for persons other than those shown by the returns which were made up from the original ballots. Under the evidence adduced in this case the testimony of the 78 witnesses was inadmissible to contradict the ballots and thus to impeach the returns of this election.

The judgment is reversed, and this cause is remanded for a new trial.