BEENE *v.* HUTTO.

4-4688

Opinion delivered May 24, 1937.

*Culbert L. Pearce,* for appellants.

*R. W. Robins* and *Coleman & Riddick,* for appellees.

SMITH, J. The history of this litigation and the facts out of which it arises are set out in the opinion in the case of *Beene* v. *Hutto,* 192 Ark. 848, 96 S. W. (2d) 485. See, also, *Hutto* v. *Rogers,* 191 Ark. 787, 88 S. W. (2d) 68.

In the case of *Beene* v. *Hutto, supra,* a demurrer was sustained to the complaint, and the question presented upon the appeal was the sufficiency of the allegations of the complaint· to constitute a cause of action. The suit was brought upon the assumption that the salary act had been initiated and· adopted by the electors of Faulkner county, and it was prayed that it should be adjudged that the act had been adopted and that the officers affected be required to receive compensation and to make settlement of the fees which they had collected in accordance with its provisions. It was held upon the appeal that the complaint did state a cause of action, and in the opinion it was said: "The complaint alleges that the election was legally held and· a majority of the voters of Faulkner county voted for the initiated act. The demurrer admits these allegations to be true." Upon the remand and trial of the case in the court below, it was found and adjudged that the act had not been legally enacted, and this appeal is from that judgment.

It was essential, to adopt the act, that it should receive, at the election, a majority of all the votes cast on the subject, and if it failed in this respect it is unnecessary to consider the other questions presented and discussed in the briefs.

. It was attempted, without success, to prove, by election officers in fifteen· out of thirty precincts in the county, that a majority of the votes had been cast for the act. It was shown at the trial from which this appeal comes that the suit was brought more than six months after the date of the election, and, as is said in appellant's brief, "No record of the election returns was kept so far as county and local matters were concerned, and all ballot boxes, tally sheets, certificates, and other documentary evidences were destroyed by the ('election') commissioners, presumably as the law provides." Upon this question, see *Condren* v. *Gibbs,* 94 Ark. 478, 127 S. W. 731, construing § 3838, Crawford & Moses' Digest, which section requires these records to be destroyed, unless the election commissioners have been notified within six months after the election to preserve them

To make proof of the material and essential allegation that the act had been adopted at the election on the subject, appellant offered in evidence a stipulation filed in the first case—the one reported under the style of *Hutto v. Rogers, supra*—to the effect that the act had received a favorable and sufficient vote. But the objection was offered: "That was between different parties in the other case. They are not the same parties here in this case." If this objection is well taken, there is a failure of proof to show the adoption of the act.

Many authorities are cited to the effect that it is not within the power of parties litigant to admit or stipulate as to the validity or constitutionality of an act, for the reason that these are judicial questions, and the rights of many other persons may, and probably do, depend upon their decision. Pretermitting this discussion and the insistence also that the parties only stipulated as to what facts were or would be shown by the ballots then in existence, if they were counted which they had the right to do, we announce our conclusion that the former stipulation was inadmissible in the present case. It was filed in a different proceeding, pending in a different court, where the parties were not identical and the relief prayed was not the same. See opinions in the former cases above referred to. The first appeal was disposed of upon the proposition that the sufficiency of a petition for initiating local laws, which the chancery court had the right to determine before the election, becomes a moot question where the election had been held before the jurisdiction of the chancery court was invoked. There were eleven plaintiffs in the chancery case. There are fifteen in the present case. Four of the plaintiffs in the former case were not made plaintiffs in the present case. In the present case four additional defendants were named, these being the circuit clerk, the county treasurer, the sheriff and collector, and the assessor, and the additional relief was prayed in this last case that these officers be required to make account of the administration of their respective offices pursuant to the provisions of the initiated act, which the court was asked to adjudge had been adopted and had become a law.

In no event could the additional defendants be bound by admissions made in a suit to which they were not parties, even though the subject-matter and the relief prayed had been the same in both suits, which was not the case. In the chapter on Evidence in 22 C. J., page 340, it is said: "An agreed statement of facts made for the purpose of one action cannot be received in another action between different parties, merely because the latter action relates to the same subject-matter."

It not having been shown that the salary act was adopted, the cause of action was properly dismissed, and that judgment is affirmed.

HUMPHREYS and MEHAFFY, JJ., dissent.

MEHAFFY, J. (dissenting). I do not agree with the majority in holding that it was not shown that the salary act was adopted, and in affirming the judgment of the lower court.

In 1910, the people of Arkansas adopted an amendment to the Constitution, the Initiative and Referendum Amendment, commonly known as Amendment No. 10. There was bitter opposition to its adoption, as there always is to any proposed reform in the interest of the people. It was said that the adoption of the amendment would abolish constitutional government. The American Bar Association adopted a resolution appointing a committee to resist the adoption of the Initiative and Referendum where it was submitted to the people. An article was published in the St. Louis Law Journal, by a lawyer, urging the defeat of this amendment, and he said, among other things, if this amendment were adopted it would not be long until some group would propose an amendment to elect United States senators by popular vote instead of by the legislatures, and he claimed this would ruin the country. It was stated in the campaign in Arkansas, not only that adoption of this amendment would abolish constitutional government, but it would carry us back "to darkest Africa." Notwithstanding all this bitter fight against the amendment, it was adopted by the people.

The first section of the amendment adopted in 1910 reads in part as follows: "But the people of each munici-

pality, each county and of the state reserve to themselves power to propose laws and amendments to the Constitution and to enact or reject the same at the polls as independent of the legislative assembly.''

The court, in the case of *Hodges* v. *Dawdy*, 104 Ark. 583, 149 S. W. 656, held that a literal reading of the first part of the amendment leads to the meaning that the people of each municipality and each county reserve to themselves the power to propose laws and amendments to the Constitution, and enact or reject the same at the polls. The court held that the meaning of that was that a municipality or county could enact any law or constitutional amendment. This case arose over a petition to initiate a local or special statute in Dallas county. Under the decision in that case, no local legislation could be initiated by the people, although everybody knew that it was the intention of the people in the adoption of the amendment to reserve this power to themselves. But because these words were contained in the same section with the words that reserved the power to the state, the court thought that under it the municipalities and counties could initiate measures to amend the Constitution, and in effect held that the people of the state could not adopt a Constitution that would authorize counties and municipalities to initiate amendments to the Constitution.

It appears to me to be perfectly plain that the people intended, by the adoption of this amendment, to reserve to the people of the state the power to initiate constitutional amendments, and to the people of each county and each municipality, the power to initiate local laws. But the court, in the case of *Hodges* v. *Dawdy, supra,* held: ''It is evident that the words 'each municipality' and 'each county' were inaptly thrust into the amendment as originally framed in a way that they express nothing unless they be treated merely as words of emphasis.''

The people knew what they wanted, and in 1920 adopted another amendment, and made it so plain that they intended to reserve to themselves the power to enact local legislation, that the court and everybody else could understand it. This last amendment provides in a sep-

arate section, for the initiative and referendum as to counties and municipalities.

We have held that the counties have a right to initiate a law to fix the salaries of county officers, and the amendment itself provides that "powers of the people are hereby further reserved to the legal voters of each municipality and county as to all local, special and municipal legislation of *every character* in and for their respective municipalities and counties."

We said, in the case of *Reeves* v. *Smith*, 190 Ark. 213, 78 S. W. (2d) 72: "Another reason not less cogent, is that amendment No. 7 permits the exercise of the power reserved to the people to control, to some extent at least, the policies of the state, but more particularly of counties and municipalities, as distinguished from the exercise of similar power by the Legislature, and their acts should not be thwarted by strict or technical construction. We are supported in this idea of more liberal construction by the following case, *Ferrell* v. *Keel*, 105 Ark. 380, 151 S. W. 269. 'In construing this amendment, it is our duty to keep constantly in mind the purpose of its adoption and the object it sought to accomplish. That object and purpose was to increase the sense of responsibility that the law-making power should feel to the people by establishing a power to initiate proper, and to reject improper, legislation.' "

While we said in the case of *Reeves* v. *Smith, supra,* that the acts of the people should not be thwarted by strict or technical construction, yet we know that the acts of the people have been constantly thwarted by strict and technical construction.

This is the third appeal in this case, and the majority holds that the act was not adopted because it did not receive a majority of all the votes cast on the subject. I think it clearly appears that it not only received a majority, but it received all, or practically all, of the votes cast on this question. This cannot be disputed, and will not be disputed by anyone who reads the record. But the majority says that it was attempted, without success, to prove by election officers, in 15 out of 30 precincts in the county, that a majority of the votes had been cast for the

act. The vote was by rubber stamps because the election officers refused to place the question on the ballot. When the petition was filed, the commissioners or the clerk issued a certificate of sufficiency, and the sponsors of the act of course took that as evidence that it would be placed on the ballot. After the certificate of sufficiency was issued and so near the election that they did not have time to take any action against the commissioners, another certificate was issued—a certificate of insufficiency. The sponsors were then advised to have rubber stamps made and vote for the act by that means.

Suit was brought in Faulkner chancery court, and this court held, on appeal of that case, that the chancery court did not have any jurisdiction. It was said that the sufficiency of the petition was a moot question when the suit was filed, and courts will not take and decide questions that are moot. The election had already been held, and it was not a contest of election in any sense, but it was an effort to have the act declared adopted. *Hutto* v. *Rogers,* 191 Ark. 787, 88 S. W. (2d) 68.

How this court could hold that that case was a contest of elections, I am unable to: see. The opinion states that it was brought by taxpayers against the county officers. Then the suit of *Beene* v. *Hutto* was brought. A demurrer was sustained to the complaint, and that case was appealed to this court. The judgment was reversed and the case remanded to be tried by the circuit court. When it was tried the second time in the circuit court, that court held that the initiative petition was insufficient, and by reason thereof the clerk's certificate of sufficiency was improperly issued and invalid; although we had held in the chancery case that this question was moot, and we have held outright that after the election, the sufficiency or insufficiency of the petition is immaterial. The court, also, held that the proposed act was never legally submitted, and any votes cast for it at said election were and are wholly ineffective, although we had held to the contrary in the chancery case.

The majority opinion does not discuss or mention the issues decided by the lower court, but passes on a question that was not passed on by the lower court, and I

think even if the lower court had passed on it, that the majority opinion is wrong. The majority opinion states that the agreed statement of facts showed that the act was adopted. They state that the agreed statement of facts filed in the case of *Hutto* v. *Rogers,* in which it was agreed that the act had been adopted, was inadmissible because it was a different case and between different parties. They cite and rely on 22 C. J. 340, and quote no other authority.

But this section in Corpus Juris relied on by the majority provides: "But if the admissions are on their face unqualified no limitation to the pending trial is implied, and they are receivable as judicial admission, in any subsequent trial of the cause between the parties. A statement connected with the party as having been made or authorized by him, is admissible in another action, even though the admission may have been withdrawn."

In the first place, this is the same action. The purpose of all the cases was to have the initiated act declared adopted. There is no other issue in either of the cases; that is, there is no other purpose stated in the petitions. In the second place, the parties were the same. The suit was brought by taxpayers in each instance against the county officers.

Section 1098 of Crawford & Moses' Digest provides: "Where the question is one of common or general interest of many persons, or where the parties are numerous, and it is impracticable to bring them all before the court within a reasonable time, one or more may sue or defend for the benefit of all."

The plaintiffs in this suit sued for themselves and all other taxpayers. The suit was against the county officers as such, and the fact that one person was county judge when the suit was begun, and a different person county judge thereafter, is immaterial. Moreover, the stipulation was signed by the attorneys who were the attorneys in all the cases. Rarely is a case tried that cannot be reversed on some technical ground. Everyone knows that the people voted on this act, and everyone knows, who has read the record, that practically all the votes cast on the question, if not all of them, were cast for the act, and

the wishes of the people should not be thwarted by unreasonable or technical construction.

I think the case should have been reversed. Mr. Justice HUMPHREYS agrees with me.