WHORTON v. GASPARD

5-3628 & 5-3629                              399 S. W. 2d 680

Opinion delivered February 21, 1966

[Rehearing denied March 28, 1966.]

*Leon Catlett* and *W. Q. Hall,* for appellant.

*Bob Scott,* for appellee.

PAUL WARD, Justice. On October 21, 1965, Joseph B. Gaspard and Otto Smith (appellees and appellants respectively in the above numbered cases, and hereafter called "petitioners") filed a Motion asking this Court to require Charles Whorton, Jr., (County Clerk of Madison County and a party in the above numbered cases), Alton Johnson (chairman of the election commission of Madison County), and Doyle Faubus (secretary of said commission) to show cause why they should not be cited for contempt of this Court for failing to comply with the Order of this Court issued April 19, 1965. At times we will refer to Whorton, Johnson, and Faubus as "respondents."

A brief mention, in chronological order, of the several incidents leading up to this litigation will, we hope, help to a clarification and better understanding of the issues here involved.

On November 3, 1964 a general election was held in Madison County—hereafter often referred to as the "election." Twenty days later petitioners asked Whorton for permission to copy certain records pertaining to the election. This request was denied.

On November 25, 1965, petitioners filed suit in chancery court requesting the court to compel Whorton to permit them to copy "the lists showing who had voted . . ." in the election. The request was granted by the trial court. On appeal to this Court by Whorton, the trial court was affirmed. That case may be referred to as No. 5-3628 (*Whorton* v. *Gaspard,* 239 Ark. 715, 393 S. W. 2d 773).

A short time after the above mentioned suit was filed in chancery court petitioners filed another suit in the same court to compel Whorton to let them copy ". . . the list of applications for absentee ballots, the individual applications for absentee ballots and the accompany-

ing absentee voters statements . . . for the election."
This request was denied by the trial court. Upon appeal by petitioners to this Court we reversed the case.
That case may be referred to as No. 5-3629 (*Gaspard* v. *Whorton*, 239 Ark. 849, 394 S. W. 2d 621).

On March 3, 1965, and during pendency of appeal in cases No. 5-3628 and No. 5-3629, petitioners filed in this Court a "Motion to Consolidate and Advance" the above cases. In the alternative, petitioners asked that Whorton be required "to retain custody of all records pertaining to . . . ." the election, and that he be enjoined from destroying said records.

Pursuant to the above Motion, and on April 19, 1965, this Court entered the following order:

"To maintain the *status quo,* pending hearing of this case and Case No. 5-3629, *Gaspard et al* v. *Whorton*, it is ordered that no litigant will destroy, or allow to be destroyed, any ballots or records or papers in his possession, involved in any way in this litigation. The cases will be separately abstracted and briefed, but will be jointly submitted."

The Order makes it clear that it applies also to case No. 5-3628.

In the Motion for Citation filed on October 21, 1965, the petitioners, in substance, made the following allegations:

(a) Whorton delivered all ballot boxes, "containing the ballots and copies of the persons voting, and all other records and papers relating to the General Election held November 3, 1964" to Johnson and Faubus.

(b) Said ballot boxes contained "the ballots and copies of the lists of persons voting . . ." in the General Election, and that said boxes were deliv-

ered to Johnson and Faubus to be destroyed by fire "in wilful disobedience" of said order of April 19, 1965.

(c)   On June 21, 1965 the said ballot boxes were destroyed by fire by Johnson and Faubus; that they were aware of said Order of April 19, 1965 at the time they burned the ballot boxes.

Attached to the Motion, as an exhibit, is what appears to be a photostatic copy of a written instrument which reads:

"June 21, 1965
Huntsville, Arkansas

We the undersigned members of the Election Commission of Madison County Ark. do hereby agree to destroy the ballots of the last Election by burning them. Except I Dotson Collins vote against the destruction of ballots for this reason. I am afraid there might be a restraining order on said ballots. If I knew there was not a restraining order on ballots then I would vote for destroying said ballots.

Doyle   Faubus
Dotson   Collins
Alton Johnson"

To the above Motion Whorton, on December 13, 1965, filed his separate response stating, in substance:

Denies that the Order of April 19, 1965 was correctly described by petitioners—that it speaks for itself; denies that he delivered ballot boxes to Johnson and Faubus; but that they removed them in February, 1965, for which he has a receipt; he learned that the boxes were later destroyed, but doesn't know when; that such action was beyond his control; that he had nothing to do with the destruction of any records in his office; that he now has "all records, ballots and papers" in his office which he had when our Order was issued on April 19, 1965,

and; he denies all other allegations in the Motion. The response is verified.

On January 3, 1966 Johnson and Faubus filed a separate demurrer to the Motion, together with briefs in support thereof, but we forego consideration of the same in view of the decision we hereafter reach.

*Motion for Summary Judgment.*

On January 10, 1966 Whorton, Johnson, and Faubus filed a Motion for Summary Judgment, with affidavits by each attached. On January 21, 1966 the petitioners filed a response together with an affidavit in support by Dotson Collins, who, for approximately four years, has been Chairman of the Madison County Republican Party, and a member of the election commission. The affidavits, in material parts, are set out below:

*Whorton:*

On the nights of 13th and 14th of January, 1965 my office was broken into by an unknown party or parties; they removed all records pertaining to the absentee ballots, and the list of applications for absentee ballots, including voters' statements; I had no control over the Election Commissioners as to destruction of ballot boxes, and; the ballot boxes were left in my office by the precinct officials, and I turned them over to the Election Commission on February 23, 1965.

*Johnson:*

On June 21, 1965 the Commission by a majority vote destroyed the ballot boxes, as required by Ark. Stat. Sec. 3-1013 (Repl. 1956); no contest involving the 1964 General Election had been filed at that time; I do not believe the Commission destroyed any envelopes containing the list of applications for absentee ballots, etc., as alleged in the Motion, which were never in the possession or control of the Com-

mission, but they had been removed by theft from the County Clerk's office.

*Faubus*: (Same as Johnson)

The affidavit by *Dotson Collins* (in support of the petitioners) was, in essence, as follows:

(a) As a member of the Election Commission I assisted in the General Election; the election officials "delivered their election paraphernalia to Whorton"; included therein were ballot boxes, stub boxes and summary sheets showing the results of said election . . . . "I know that some of the ballot boxes contained a copy of the list of persons voting . . . and I believe all boxes contained such a list . . ." as was the custom;

(b) Late in the evening on June 21, 1965 I received a telephone call from Doyle Faubus, asking me to attend a meeting at the court house; I attended, and first learned Whorton had turned the ballot boxes over to Johnson and Faubus; I also learned they desired to destroy the boxes and election paraphernalia; I objected because I had heard there was a Court Order restraining such action; Att'y Hall, who was consulted over my objections said he didn't believe there was any such order; I asked for a delay of 24 hours to consult Judge Butt, but the others would not agree; we all signed the statement showing my objections.

(c) I have never known before of the Clerk giving the ballot boxes or any election records to the Commission until they were to be destroyed.

After a careful review of the pleadings, exhibits, and the contents of the affidavits heretofore summarized, we have reached the conclusion set out and explained below.

*Re: Charles Whorton, Jr.* It clearly appears that this Court would not be justified in holding Whorton in contempt of the Order of this Court entered on April 19, 1965. The Order, beyond doubt, is prospective only. It provides "that no litigant will destroy, or allow to be destroyed . . ." etc. We find nothing to justify a finding that Whorton did anything in violation of the Order after it was issued on April 19, 1965. To the contrary, it is uncontradicted that in January 1965 someone, unknown to him, took from his office all records pertaining to the absentee ballots and the list of applications, and; that on February 23, 1965 he turned over to the election commissioners the ballot boxes. We find nothing to show that Whorton had anything to do with destroying the ballots on June 21, 1965. If there does exist any real likelihood it could be proved that Whorton is mistaken, or that he has deliberately misrepresented the facts, we feel it was incumbent on the petitioners to so state. This they have not done. In fact no such allegation is in petitioners' affidavit. Regardless of any suspicion that may exist as to the impropriety of Whorton's actions herein complained of, that fact alone does not justify this Court in finding him guilty of contempt. The rule which we think is applicable to this case is very well stated in 12 Am. Jur.—Contempt—§ 74 as follows:

> "An adjudication of contempt is improper where there is no material evidence to connect the alleged contemner with the acts charged and he denies any connection, although there are circumstances affording reasonable grounds for suspecting his participation."

*Re: Johnson and Faubus.* A careful consideration of the contents of the affidavits filed herein and a construction of the applicable statutes and decisions forces us to conclude that Johnson and Faubus cannot be held guilty of violating our Order of April 19, 1965. The reasons for this conclusion are set forth hereafter.

(a)   The wording of the Order makes it unmistake-

ably clear that it was directed to the "litigants" in cases No. 5-3628 and 5-3629. It is just as clear that Johnson and Faubus were not "litigants" in either of said cases. It is true, as pointed out by petitioners, that, under some circumstances, not present here, a non-litigant can be held in contempt for violating a court order. However, when such contempt is allegedly committed outside the presence of the court (as here) it should be made clear to the court that the contemner was aware of the full import of the order which he is charged with violating. Again, in 12 Am. Jur.—Contempt—§ 27 it is said that one not a party to the suit "cannot be charged with contempt unless a copy of the injunction [Order] was served upon him or it is proved that he had knowledge of its provisions. . . ." By no stretch of the imagination can it be said here that these respondents were served with notice or that they were aware of the provisions of our Order of April 19, 1965. It is true that Collins says in his signed statement of June 21 that he was "afraid there might be a restraining order on said ballots," but he did not profess to *know* there was such an order—much less its provisions. On the other hand Collins frankly states that (over his protest) Faubus called an attorney who informed him he didn't think there was any such order. It is just as reasonable to say Collins' statement indicates good faith on the part of the respondents as to say it shows bad faith on their part. It must also be remembered that Johnson and Faubus could have felt it was not only their right but their duty to destroy the ballot boxes—as shown below.

We find merit in respondents' contention they merely followed the law when they destroyed the ballots. Ark. Stat. Ann. § 3-1013, in parts material here, reads:

"The *County Election Commissioners* shall retain the custody of and safely keep all ballots and certificates returned to them . . . for a period of six (6) months, after which time the same *shall be destroyed*, unless the *Commissioners* shall be sooner notified in *writing* that the election of some person

. . . has been *contested,* or that *criminal prosecution* has been begun against any officer of (the) election . . . ." (Emphasis added.)

It is of course undisputed here that more than six months had elapsed since the election was held on November 3, 1964 before the ballot boxes were destroyed by the two respondents on June 21, 1965. It is likewise undisputed that the two respondents had not, before June 21, been notified in *writing* of a *contest* or a *criminal prosecution.*

We have had many occasions to construe or comment on said section 3-1013. See: *Condren* v. *Gibbs,* 94 Ark. 478, 127 S. W. 731; *Bowden* v. *Webb,* 116 Ark. 310, 173 S. W. 181, and; *Benne* v. *Hutto,* 194 Ark. 107, 105 S. W. 2d 530. In the *Gibbs* case we said:

"The ballots and certificates of said election returned to them from said Bass Little Township were retained by the county election commissioners for a period of six months after said election and the returns had been delivered to them, and until March 22, 1909, when they destroyed them in pursuance of the provisions of section 2838 of Kirby's Digest." (Same section as said § 3-1013.)

In the *Webb* case there is this statement:

"It will be observed from reading the terms of the statute, that the ballots are to be kept in separate packages and not opened until ordered by a court of competent jurisdiction in a contest or a criminal prosecution . . . ."

In the *Hutto* case we reaffirmed that § 3838, Crawford & Moses Digest (same as said § 3-1013) ". . . requires these records to be destroyed, unless the election commissioners have been notified within six months after the election to preserve them."

It is readily understandable why public policy requires that the secrecy and sanctity of the ballot should be so zealously protected by statute.

The issue can be briefly stated in this way: Did these respondents knowingly destroy anything which this Court ordered them not to destroy? The answer is obvious and also brief. They did not.

Finding no material issue of the fact presented, the Motion for Summary Judgment is sustained, and the Motion for Citation is denied.

McFADDIN and GEORGE ROSE SMITH, JJ., dissent.

COBB, J., not participating.

GEORGE ROSE SMITH, Justice, dissenting. I am unable to agree that this matter involves no disputed question of fact and that it should therefore be disposed of upon a motion for summary judgment.

In the principal cases Gaspard and others sought to copy among other documents, "the lists showing who had voted (including those who had applied for absentee ballots) in the general election . . ." *Whorton* v. *Gaspard*, 239 Ark. 715, 393 S. W. 2d 773 (1965). We held that they were entitled to copy those documents.

Under the statute the election clerks must make four copies of the lists in question. Ark. Stat. Ann. § 3-919 (Repl. 1956). One copy is to be temporarily posted at the polling place and does not concern us here. A second copy is to be filed with the county clerk. Here that clerk has filed an affidavit stating, by implication only, that this second copy of the lists was stolen from his office in the courthouse.

With two copies of the lists missing the other two copies were of vital importance in Gaspard's attempt to investigate the purity of the vote in Madison county.

Those remaining two copies, under the law, should have been sealed up in the original and duplicate ballot boxes. Section 3-919, *supra*. According to the affidavit of Dotson Collins, the third member of the county board of election commissioners, the law in this respect has customarily been followed in the county; as far as he knows, the law was obeyed in the election now in issue.

The affidavits of Afton Johnson and Doyle Faubus, the other two members of the county board, *do not deny* the charge that they destroyed the lists. Their affidavits merely state that to the best of their knowledge they did not destroy envelopes containing certain other documents. On a motion for summary judgment we must construe the proof in the light most favorable to the party resisting the motion. *Russell* v. *City of Rogers*, 236 Ark. 713, 368 S. W. 2d 89 (1963). When the proof is so considered it stands as an uncontradicted fact that the board did destroy the lists.

I lay aside the suggestion that Johnson and Faubus were not bound by this court's order because they were not "litigants" in the cases. It is settled too firmly for argument that one who knows of a court order, as these men did, can not flout it with impunity. *Hickinbotham* v. *Williams*, 228 Ark. 46, 305 S. W. 2d 841 (1957). I lay aside the last-ditch argument that perhaps, after all, the lists might not have been technically admissible in evidence if the cases had eventually been tried on their merits. Our order prohibited the destruction of papers "involved in any way in this litigation." The lists in question, far from being only remotely involved, were the heart of the plaintiffs' lawsuits. The election commissioners did not destroy the lists upon counsel's advice that they were inadmissible or were not involved in the litigation.

On the record now before us whether the destruction of the lists was a contemptuous act is a disputed question of fact—a question that can be set at rest only if the members of the county board submit to cross-

336

examination under oath. Apparently they are to escape the test of their sincerity. I would appoint a master to take testimony bringing the whole truth before the court, for whatever action might then prove to be appropriate.

McFADDIN, J., joins in this dissent.