Lisa BAKER *v.* Tommy J. DAVES

CA 03-136                                    119 S.W.3d 53

Court of Appeals of Arkansas
Divisions III and IV
Opinion delivered October 1, 2003

---

*Everett O. Martindale*, for appellant.

*Rebecca Brown, P.A.*, for appellee.

JOHN F. STROUD, Chief Judge. Appellant, Lisa Baker, appeals from an order finding that she was bound by an agreement to sell a house that was conveyed to her by deed. The agreement was memorialized in the divorce decree of her mother, Eleanor Daves, and appellee, Tommy Daves. She raises two points on appeal: (1) It was error for the lower court to order appellant to sell her real property without her agreement, or, in any event, without a written agreement signed by appellant; (2) There is no consideration to appellant to support the lower court's decision that an agreement existed between appellant and appellee. We reverse and remand.

This case originated as a divorce action between appellee, Tommy Daves, and Eleanor Daves. Appellant was not a party to the proceedings at the time of the hearing on the divorce, but she

was present, serving as her mother's witness. The property-settlement portion of the August 21, 2002 divorce decree provided in pertinent part:

> This property settlement agreement is entered into by the parties herein to settle all property interests between the parties fully. For the mutual promises herein and for other good and valuable consideration, receipt of which is hereby acknowledged, the parties agree:
>
> . . .
>
> III.  The parties each have a one-half, undivided life estate interest in the trailer home and outbuildings on 2.2 acres located at 15830 Vimy Ridge Road, Alexander, Arkansas 72002; Lisa Baker, the Plaintiff's [Eleanor Daves's] daughter, holds the remainder interest and title to the property so described herein. The parties and Lisa Baker have agreed to sell the property by January 28, 2003. The Defendant [Tommy Daves] will list the property with a licensed, bonded real estate company for the fair market value of the home and the parties shall cooperate and make every good and reasonable effort to sell the property. The proceeds shall be divided equally between the Plaintiff and the Defendant with these exceptions:
>
> . . .
>
> b.  Subject to proof, all insurance and taxes paid on the real property by Lisa Baker since the transfer of deed in March 2000 shall be repaid to Lisa Baker from the proceeds[.]

On October 29, 2002, appellee filed a motion entitled, "Motion to Add Lisa Baker as Third Party and for Contempt," in which he alleged that appellant had initially cooperated with the property being listed for sale, but that she had since refused to do so. After the withdrawal of appellant's initial objection to being named as a third-party defendant, the trial court granted that portion of appellee's motion by order entered November 18, 2002, *nunc pro tunc*. The hearing on the contempt portion of the motion was held on November 6, 2002.

At the contempt hearing, appellant testified that she was in the courtroom, sitting on the second row, when the property settlement agreement was read during the divorce action, but that she could not hear. She stated that she was in the hall during the negotiations leading to the agreement, but that she was not part of the negotiations. She stated that she had no representation, that she was misled and misinformed, and that she should not be forced to sell something that belongs to her to settle the Daves's dispute. She testified that no one asked her to sign any document to sell her land and that no one asked her at the divorce hearing if she agreed to sell her property. She stated that she did not know what was in the agreement until she saw a copy of the divorce decree.

Appellee testified that he acquired the property in question in 1980 and had paid it off in April 1987, prior to marrying Eleanor Daves. He stated that appellant participated in the negotiations concerning the property-settlement agreement and that she agreed to sell the property. He also testified that before they came into the courtroom for the divorce, the two attorneys "stood there with all three of us and repeated the agreement to make sure everybody understood it."

Tommy Glen Daves, appellee's son, testified that he had observed appellant participate in the negotiations that preceded the divorce and that she agreed to sell the property. He stated that he was sitting on the second row in the courtroom when the agreement was read into the record, and that no one asked appellant if she agreed to it.

Thomas Yates, appellant's brother, testified that he sat next to appellant on the second row during the divorce proceedings. He said that the attorneys told the judge "from the table area" what the agreement was and that he could not hear anything clearly. He said that he was not aware appellant would have to sell her property until he saw the divorce decree that arrived in the mail.

The record of the divorce proceedings was introduced as an exhibit. The following pertinent portion was abstracted for this appeal:

> [ATTORNEY FOR ELEANOR DAVES]: The parties have a joint life estate in 2.2 acres of property and a house on Vimy Ridge Road in Alexander, Arkansas. The parties have agreed to sell the house and 2.2 acres and split the proceeds. They have agreed that Mr. Daves will contact a real estate agency.

[ATTORNEY FOR Mr. DAVES, *appellee*]: They have a life estate. It was placed in her daughter's name and the daughter is the title owner. She is going to cooperate in listing the property for sale.

[ATTORNEY FOR ELEANOR DAVES]: All parties will cooperate.

[ATTORNEY FOR MR. DAVES]: They are actually selling the property not just the life estate.

[ATTORNEY FOR ELEANOR DAVES]: The daughter has agreed to sell her interest in the property as well as the life estate of the two parties.

TOMMY J. DAVES: I heard the agreement.

ELEANOR J. DAVES: I heard the agreement.

For her first point of appeal, appellant contends that she never agreed to sell the property, and that "even if some of the parties thought there was an agreement to sell the land, it cannot be enforced since it was not in writing." Under the facts of this case, we find merit in appellant's argument.

Arkansas Code Annotated section 4-59-101 (Repl. 2001) provides in pertinent part:

Contracts, agreements, or promises required to be in writing.

(a) Unless the agreement, promise, or contract, or some memorandum or note thereof, upon which an action is brought is made in writing and signed *by the party to be charged therewith, or signed by some other person properly authorized by the person sought to be charged,* no action shall be brought to charge any:

. . .

(4) Person upon any contract for the sale of lands, tenements, or hereditaments, or any interest in or concerning them[.]

(Emphasis added.)

Here, the record does not reveal any writing signed by appellant, or by any other person properly authorized by her, to sell the property in question. Moreover, the fact that appellant was present in the courtroom when the property-settlement agreement

was read into the record during the Daves's divorce proceedings is of no benefit to appellee under these circumstances. Finally, the fact that appellant was subsequently added to this case as a third-party defendant does not cure the fact that she was not a party to the divorce action on the date that the property-settlement agreement was read into the record and specifically agreed to on the record by the parties to the divorce action.

We distinguish this situation from *Linehan v. Linehan*, 8 Ark. App. 177, 649 S.W.2d 837 (1983), which is cited by the dissent. First, in *Linehan* the purported agreement involved alimony, not real property. Moreover, the stipulated agreement that was read into the record in open court was limited to the parties to the action. Furthermore, in *Linehan* we explained:

> We are not saying that a stipulation in every instance will have the full force and effect of a binding agreement or a contractual right; but when, as here, all the rights and liabilities of the parties are covered in such a total and complete agreement, then it will not be modifiable.

8 Ark. App. at 181, 649 S.W.2d at 839. We think that the instant case is an example of the type of situation where a binding agreement was not established with respect to appellant.

In short, it is not disputed that the agreement at issue here involves the sale of real property, that appellant was not a party to the original divorce action, that she was not represented by counsel during the divorce proceedings before the trial court, and that she was not asked by the court as part of the record of the divorce proceedings if she heard the agreement and agreed to its terms.[1] Consequently, we hold that the trial court erred in con-

---

[1] The dissent contends that our "primary justification for reversal is that the appellant cannot be bound by the agreement that was read into the record because she was not a party to the lawsuit," and that this argument was not raised below nor on appeal. We merely note that our primary justification for reversal is that the statute of frauds requires that agreements concerning the sale of land, or any interest in or concerning them, must be in writing and signed by the party to be charged therewith, and that in the instant case there was no agreement concerning the sale of the property in question that was in writing and signed by appellant.

Moreover, our reliance upon the fact that appellant was not a party to the action on the date that the property-settlement agreement was read into the record, the fact that she was not

cluding that she was bound by the terms of the agreement.

In light of our disposition of appellant's first point of appeal, it is not necessary to address her second point.

Reversed and remanded.

HART, ROBBINS, and NEAL, JJ., agree.

PITTMAN and CRABTREE, JJ., dissent.

TERRY CRABTREE, Judge, dissenting. The sole issue on appeal is whether the agreement for the sale of a 2.2-acre parcel of land was unenforceable because it violated the statute of frauds. Without a single citation to authority, and based on arguments that are not remotely raised by the appellant in this appeal, the majority reverses the trial court's decision that the agreement did not offend the statute of frauds. Because the trial court's decision is entirely consistent with the law and fully supported by the facts, I respectfully dissent.

Appellant, Lisa Baker, is the daughter of Eleanor Daves, who was married to appellee Tommy Daves. Prior to his marriage to Eleanor, Tommy owned a 2.2-acre tract in Alexander, Arkansas. He and Eleanor lived there during the course of their marriage. In 2000, Tommy conveyed this property to appellant, reserving a life estate in both himself and Eleanor. Eleanor later filed for divorce. At the divorce hearing on July 29, 2002, a stipulated agreement was read into the record by the attorneys. Although the majority sets out only a small portion of the divorce proceedings, the following is a full recitation of what occurred as it relates to the agreement in question:

---

represented by counsel before the bench at that hearing, and the fact that she was not asked by the court as part of the record of those proceedings if she heard and agreed to the terms, serves simply to distinguish the instant set of facts from those in the cases relied upon by the dissent. We do not consider that we have thereby gone beyond the issue raised by appellant.

Finally, the dissenting opinion contends that under our reasoning, "since appellant was not a party, she would not be bound by the agreement that was read into the record even had she expressly verbalized her agreement in open court." Nothing could be further from the truth. It is precisely because we believe that she *could* have been bound by the agreement if she had expressly verbalized her agreement in open court that we emphasized and relied upon the fact that she did not.

THE COURT: Do y'all need to read something into the record?

MS. BROWN: [*Tommy's attorney*]: Yes, we do, your Honor.

THE COURT: Okay.

MS. BROWN: I think Ms. Marshall is going to read it into the record.

THE COURT: Go ahead.

MS. MARSHALL: [*Eleanor's attorney*]: The property settlement between the parties, Eleanor Daves and Tommy J. Daves. The parties have a life — a joint life estate in 2.2 acres of property and a house located on Vimy Ridge Road in Alexander, Arkansas. . . . The parties have agreed to sell the house trailer and the 2.2 acres and to split the proceeds. Uh, they have agreed that Mr. Daves will contract with a real estate agency to sell the house and the 2.2 acres and have six months in which to do so.

MS. BROWN: They have a life estate in it, your Honor, but it was placed in her daughter's name and her daughter is the title owner. And she's going to cooperate in listing the property for sale.

MS. MARSHALL: Yes. All parties will cooperate.

THE COURT: Okay. But all they're selling is their life estate?

MS. BROWN: No. They're actually selling the property.

THE COURT: Oh, okay.

MS. MARSHALL: The daughter has agreed —

THE COURT: Okay.

MS. MARSHALL: — to sell her interest in the property, as well as the life estate of the two parties.

THE COURT: Okay.

MS. MARSHALL: Both parties have agreed to cooperate with the real estate agent and Mr. Daves [sic] to sell the property within six months. Any repairs on the property that are done prior to the sale will be reimbursed to the person making the repairs, with documentation at the time of the sale.

. . . .

MS. MARSHALL: Lisa Daves [sic], the daughter of Eleanor Daves, will be reimbursed, subject to proof, her payment of taxes and insurance on the trailer home and the 2.2 acres for this year.

THE COURT: Let me interrupt you again. For this taxable year, which will be next year, or the payments made this calendar year, which are taxes on last year? Just so if we come back, I want to know what we're talking about.

MS. MARSHALL: Okay. The insurance payment in March pays for the insurance from March 2002 until March 2003, but it's a one-time payment. She would like reimbursement of that amount.

THE COURT: You said taxes.

MS. MARSHALL: Taxes. Taxes, also.

MS. BROWN: She's already paid the taxes for the year two thousand.

MS. MARSHALL: Two, two.

MS. BROWN: — one.

MS. MARSHALL: Two thousand and one. She has a tax bill that is due in October, which will fall within the six months that must be paid.

| | |
|---|---|
| THE COURT: | Okay. |
| Ms. MARSHALL: | And then a reimbursement of that October tax payment. |
| Ms. BROWN: | Actually, she paid taxes for 2000, but she paid those in 2001. And if she pays the ones that are due this year, she'll be reimbursed for those at the time. Just whatever she's paid that she can provide proof for since the date that they made the transaction. |
| Ms. MARSHALL: | Since the date of the transaction. |
| Ms. BROWN: | Right. |
| Ms. MARSHALL: | Okay. That would be since the date of the-the deed transfer in March 2000. |

This agreement was incorporated into Tommy and Eleanor's divorce decree that was entered on August 21, 2002. On September 24, 2002, Tommy filed a motion for contempt alleging that appellant and Eleanor were refusing to abide by the agreement for the sale of the property. Appellant set up the statute of frauds as a defense, arguing that there was no written agreement for the sale of the property that was signed by her.

A hearing was held on November 6, 2002. In her testimony, appellant admitted that she had paid nothing for the land, but she denied that the property was deeded over to her as a means of financial planning because her mother was sick and in need of medical care with the possibility of being placed in a nursing home. Appellant admitted that she was present in the hallway with her mother at the time of the divorce hearing when the agreement was being discussed, but she denied taking part in or having any knowledge of the negotiations. She admitted that she was in the courtroom when the agreement was being read into the record, but she denied that she was able to hear what the attorneys were saying. Appellant also admitted that she listed the property for sale pursuant to the agreement.

As noted in the majority opinion, Tommy and his son testified that appellant participated in the negotiations and said that appellant agreed for the property to be sold. Tommy added that the property had been listed for sale but that appellant had removed it from the market.

In determining that appellant was bound by the agreement, the trial court stated:

> Ms. Baker, I think you knew about it and participated in this agreement. I think that that was a part consideration for the settlement, and much of this opinion is based on the transcript where it's come out where the attorney said. I think it's fairly easy to hear it throughout the courtroom. And, also the fact that you did, in fact, list the property shows me that you knew about it and agreed to it and then changed your mind.

The argument appellant presents on appeal for the reversal of that decision is a narrow one. She argues simply that there was no written contract embodying the agreement for the sale of the property that was signed by her. As authority, she refers us to the statute of frauds, Ark. Code Ann. § 4-59-101 (Repl. 2001), and a scattering of cases that stand only for the basic proposition that an agreement for the sale of land is not enforceable unless it is in writing and signed by the party to be charged. In my considered opinion, based on the argument presented, the law, and the facts developed at the hearing, the trial court's decision should be affirmed.

### The "In Writing" Requirement

This requirement was satisfied by the agreement being read into the record in open court. In *Linehan v. Linehan*, 8 Ark. App. 177, 649 S.W.2d (1983), we rejected an argument that a stipulated agreement dictated into the record could not qualify as an independent contract because it was not in writing and signed by the parties. We held that agreements made in open court which are taken down by the court reporter and acted upon by the parties are valid and binding. *See also Bishop v. Bishop*, 60 Ark. App. 164, 961 S.W.2d 770 (1998); *Kunz v. Jarnigan*, 25 Ark. App. 221, 756 S.W.2d 913 (1988). Also, in *Rachel v. Rachel*, 294 Ark. 110, 741 S.W.2d 240 (1987), our supreme court addressed the issue of whether a waiver of the requirement for corroborating the ground for divorce, which the relevant statute requires to be in writing,

could be accomplished by the waiver being dictated into the court record. The supreme court had no hesitation in holding that an oral waiver made in open court and recorded by the court reporter is just as valid as though it had been transcribed and executed. Based on these authorities, the agreement was "in writing."

### The Requirement that the Agreement be "Signed by the Party to be Charged"

The question here is one of assent. Perhaps through inadvertence, appellant was not asked to affirm the agreement after it was read into the record. However, her conduct unequivocally demonstrates her assent to the agreement.

It is settled law that manifestation of assent to a contract may be made wholly by spoken words or by conduct. *ERC Mortgage Group, Inc. v. Luper*, 32 Ark. App. 19, 795 S.W.2d 362 (1990). A person's manifestation of assent by spoken words or conduct meets the requirement of the statute of frauds. *Van Dyke v. Glover*, 326 Ark. 736, 934 S.W.2d 204 (1996). A person's manifestation of assent to a contract is judged objectively and may be proved by circumstantial evidence. *Childs v. Adams*, 322 Ark. 424, 909 S.W.2d 641 (1995). Whether there has been assent to a contract is a question for the trier of fact. *Van Dyke v. Glover, supra.*

Here, the terms of the agreement were openly disclosed on the court record in the presence of the appellant. It was explained to the trial court that the appellant held title to the property and that she had agreed for it to be sold. A good portion of the discourse was devoted to the reimbursements that were to be made to appellant and the trial court's concern that the record accurately reflect the agreement that was being made. Yet, the appellant stood silent, voicing no objection to the agreement itself or any of its terms, thereby allowing the agreement to be placed on the solemn record. In *McCormick v. State*, 74 Ark. App. 349, 48 S.W.3d 549 (2001) (supplemental opin. granting rehearing), we applied contract law to a plea agreement in holding that the prosecutor's presence in the courtroom and his silence when the plea was accepted by the court was a manifestation of his consent to the plea agreement as required by Ark. R. Crim. P. 24.3. The same should hold true in this case. Moreover, as conduct just as significant as her silence, appellant listed the property for sale in keeping with the terms of the agreement. Undeniably, appellant's conduct

manifested her assent to the agreement. Consequently, the requirement that an agreement be signed by the party to be charged was satisfied.

In sum, the trial court was unimpressed with appellant's credibility. The court found that she participated in the negotiations, that she had knowledge of the agreement, and that she consented to the agreement but later changed her mind. The trial court specifically rejected appellant's claim that she could not hear what the attorneys were dictating into the record. The court was also persuaded by the fact that appellant had listed the property for sale. These findings are not clearly erroneous, and the trial court's decision is well-grounded in the law. Based on the narrow argument raised by appellant, there is no basis for the reversal of the trial court's decision.

## The Majority Opinion

The majority does not dispute the law that an agreement which is read into the record in open court qualifies as a binding agreement even though it is not in writing and signed. The majority, however, dismisses this law because "appellant was not a party to the original divorce action," because "she was not represented by counsel during the divorce proceedings before the trial court," and because "she was not asked by the court as part of the record of the divorce proceedings if she heard the agreement and agreed to its terms." No authority is cited for any of these propositions, and the first two "concerns" go well beyond the scope of the limited issue raised in this appeal, which is whether there was a written agreement to which appellant gave her assent. Thus, the majority's decision goes beyond this precise issue and gives the appellant the benefit of arguments she has not even raised. However, since the majority has interjected these issues into this appeal, I feel compelled to discuss them one by one.

The majority's primary justification for reversal is that the appellant cannot be bound by the agreement that was read into the record because she was not a party to the lawsuit. This argument was not raised below, nor can it be found in appellant's argument on appeal. No citation is required to state the fundamental rule that we do not reverse based on arguments that the appellant does not raise on appeal. See Stiles v. Hopkins, 282 Ark. 207, 666 S.W.2d 703 (1984). Even so, I know of no authority stating that a person cannot be bound by an agreement that is freely entered into with

parties to a lawsuit, simply because the person is not a party to the litigation. Under the majority's reasoning, since appellant was not a party, she would not be bound by the agreement that was read into the record even had she expressly verbalized her agreement in open court. Surely, that cannot be so. One who is not a party to a lawsuit can be bound by an order if it was served upon him or if it is proven that he had knowledge of its provisions. *Whorton v. Gaspard*, 240 Ark. 325, 399 S.W.2d 680 (1966); *see also, e.g., Henry v. Eberhard*, 309 Ark. 336, 832 S.W.2d 467 (1992).

I also know of no authority that requires persons to be represented by counsel before entering into a contract. Although appellant claimed to have been misled, she did not say just how she had been misled, and in any event the trial court did not believe her testimony. While the lack of representation might be a valid consideration if appellant had moved to set aside the agreement on the basis of fraud or overreaching, appellant did not seek that relief. On the contrary, appellant did not seek to set aside the agreement; instead she steadfastly denied that she had entered into any agreement at all. Most importantly, that she was not represented by an attorney has no bearing on the issue of whether or not the agreement violated the statute of frauds, which is the only issue raised in this appeal. As one court has put it, the statute of frauds is concerned with the enforceability of contracts, not their validity. *Troyer v. Troyer*, 341 S.E.2d 182 (Va. 1986).

Finally, the fact that appellant's assent was not stated on the record is of no great moment. As pointed out above, assent to a contract can be shown by conduct, as well as by spoken words.

In conclusion, the majority opinion fails to offer a cogent reason for the reversal of this case. The trial court's findings of fact are not clearly erroneous, and its decision is supported in the law.

I dissent.

PITTMAN, J., joins.